## J. P. ALBERT, APPELLANT, V. JAMES P. TWOHIG, COUNTY CLERK, ET AL., APPELLEES.

[FILED NOVEMBER 2, 1892.]

| 35 | 563 |
| 140 | 142 |

| 35 | 563 |
| 42 | 770 |

| 35 | 563 |
| 46 | 773 |

1. **Contest of Election**: EVIDENCE: PRESERVATION OF BALLOTS. In a contest of election the ballots cast at the election constitute the primary evidence to determine the rights of the respective parties. It must appear, however, that they have been preserved substantially in the manner and by the officers prescribed by the statute. If they have been placed in a position to be tampered with by interested parties, the burden of proof is on the party offering them in evidence to show that they are in the same condition as when sealed up by the several election boards.

2. ————: JURISDICTION OF DISTRICT COURT. The district court has jurisdiction in case of contested election in relation to township organization.

3. **Statutes**: VALIDITY: REPEAL BY IMPLICATION. Repeal by implication is not favored, and a statute will not be declared so repealed unless the repugnancy between the new statute and the old one is plain and unavoidable.

4. ————: ————: TOWNSHIP ORGANIZATION. *Held,* That the several statutes in relation to township organization to which objections are made are valid and are to be construed together; that section 7 of the act of 1891 in reference to elections, was

designed to apply to future elections and does not affect art. 4, sec. 4, chap. 18, Comp. Stats., which provides for temporary organization.

APPEAL from the district court for Dakota county. Heard below before NORRIS, J.

*Davis, Gantt & Briggs,* for appellant.

*Barnes & Tyler,* and *Jay & Beck, contra.*

MAXWELL, CH. J.

Contestant alleges that he is an elector of Dakota county, competent to bring the action; that James P. Twohig is the duly elected, qualified, and acting county clerk of Dakota county; that Wm. Taylor, M. Beacon, and J. O. Fisher are duly elected, qualified, and acting board of commissioners of said county; that E. B. Wilbur, E. L. Wilbur, and C. D. Smiley are residents and electors of said county, and as such, with certain other electors, to the number of thirty-five, signed a petition which was filed on the 13th of August, 1891, in the office of the county clerk of Dakota county, and which asked the board of commissioners to submit to the voters of Dakota county the question of township organization, at the general election held on the 3d day of November, 1891; that this question was submitted and voted on at said election, and that the highest number of votes cast at said election, for any office, was fifteen hundred, and on the question of township organization there was cast for township organization 826, and against township organization 154, and that 620 of the electors voting at said election did not vote on said question; that the canvass of votes showed an apparent majority of 52 for township organization and the same was declared to be carried.

As the grounds of the contest, the contestant alleges that the election is illegal and void—first, because the act of

the legislature, providing for township organization, is unconstitutional; second, because the act of the legislature providing for township organization is incomplete by reason of defects and omissions in the act providing for the same, and it is impossible to organize and carry on the business of the county under the laws that now exist; third, because a part of the law relating to township organization was passed by the legislature of 1879, and incorporated in the acts of the legislature of 1879 under the head of revenue, as is found in said laws, being sections 62 to 72, inclusive, of said act in relation to counties, and 91 to 101, inclusive, under the head of revenue; and at the time of the passing of said act no provision had been made by the legislature providing for township organization, nor was any provision made until the session of 1883, at which time the act providing for township organization was passed; and said last act is incomplete without incorporating therewith the acts of 1879; and said acts are not in said act of 1883, or in any other act of the legislature referred to, or adopted or made a part of said law, or in any manner referred to; nor is the same adopted by any other act of the legislature passed before or since that date; and said act of 1883, and any amendment thereto made since, is incomplete and void without said acts of 1879 being considered therewith, for the further reason that the legislature of 1891, in chapter 23 of the laws of said session, amended section 7 of the Compiled Statutes, entitled Elections, and by said amendment repealed, by implication, that part of section 5 of the original act of 1883, and the amendment thereto, that provided for the election of supervisors at the same time the question of township organization was submitted to the electors, and, by reason thereof the election of supervisors at said election is null and void; that no petition for the submission of said question, signed by fifty legal voters of said county, was filed with the county clerk and acted upon by the commissioners

in calling said election; that the commissioners of said county, in submitting said question to a vote, did not make any finding that a petition containing the names of more than fifty legal voters of said county had been presented to them asking that said question be submitted; that in each precinct in said county illegal votes were cast and counted, sufficient in number to change the result of the election, and by persons whose names are unknown to contestant.

In their answer the defendants allege: First, that the court has no jurisdiction to try and determine the questions raised by the petition. Second, that there is a defect of parties defendant in this cause. Third, denying that Albert, the contestant, is an elector of Dakota county, and competent to contest in this cause. There are a number of admissions that need not be noticed.

The cause was referred to a referee to take the testimony and find the facts. The referee took the testimony and made his report as follows:

"I find that at the general election held on November 3, A. D. 1891, within Dakota county, Nebraska, the question of township organization was submitted to the electors of said county, and that the total vote on said question as returned by the several election boards of the county and as canvassed and declared by the canvassing board of said county, is as follows, to-wit:

For township organization.................................... 826
Against township organization............................. 154

Leaving an apparent majority for township organiza-
     tion of.................. ...................................... 672

"I further find that no return was made as to any double ballots being cast.

"Second—I find that on the recount of the ballots of the several precincts of said Dakota county, Nebraska, by me as referee, of the votes cast in said county at the general

election held in said county on the 3d day of November, A. D. 1891, said ballots showed the following facts, to-wit :

For township organization............. ................... '697
Against township organization........................... 162
Ballots voted with two crosses, both for and·against
    township organization............. ................... 136
Ballots that were voted blank, neither for nor against
    township organization.................................. 497
Ballots not counted...................................... 5

Total vote of county........................................ 1497

"Third—I find and report that the ballots of Covington precinct were in a ballot box which had been opened for the taking out of the poll book; and that the ballots of Omadi precinct were in a paper sack, a common grocery sack, and that the same were unsealed when they were given to me to recount; and. that the ballots of St. John's precinct were opened and unsealed when they were given to me to recount; and that the ballots of Hubbard precinct were tied in a compact, almost square bunch with a string through the center of them, and they were well sealed up in an envelope provided for that purpose, when they came into my hands for the purpose of the recount; and that the ballots of Dakota precinct were in a large package and apparently attempted to be sealed, but not much sealed when they came into my hands for the purpose of the recount; and that the ballots of Summit, Pigeon Creek, and Emerson precincts were apparently sealed up properly at the time they came into my hands for the purpose of the recount. I further find that the ballots of all eight precincts of Dakota county were on strings.

"Fourth—I find that the testimony taken by me, as hereto attached and herewith reported, of parts or all of the several members of the election boards of Covington, Omadi, St. John's, and Hubbard precincts, tends to sustain and affirm the returns as made by them to the canvassing

board of the county, as set forth in the poll books of the
said several precincts, of the general election held on the
3d day of November, 1891, and as canvassed and declared
by the canvassing board of said county.

"Fifth—I find that the testimony taken by me, as hereto
attached and herewith reported, of parties other than the
members of the several election boards mentioned in the
fourth finding herein, tends to establish the fact that said
ballots were in the condition, at the time I received them
for the purpose of the recount herein, that they were in
when they were first deposited in the vault of the county
clerk of said Dakota county, Nebraska, after the official
canvass of the vote of said several precincts was completed.

· "Sixth—I find that the vault of the county clerk of
Dakota county, Nebraska, wherein the ballots cast at the
general election held in said county on the 3d day of
November, 1891, were kept, is very unsafe and insecure,
and that said vault is not kept locked either by day or
night, and that said ballots were readily accessible to others
than their proper custodians."

It will thus be seen that the ballots from some of the
precincts were not sealed up when sent to the county clerk
and that they were not kept by him in a place free from
access of persons generally. The court below refused,
under these circumstances, to recount the ballots. Did it
err?

The first objection of the defendant is to the jurisdiction
of the court in case of contest of election. In *Burke v.*
*Perry*, 26 Neb., 414, it was held, in effect, that a contest of
election for county seat was an action and was properly
brought in the district court. We see no reason to change
our views in that regard and therefore hold that the court
below had jurisdiction and that the case is properly here.

· Second—As between the ballots cast at an election, and
a canvass thereof by the election officers, the former are the
primary and controlling evidence; but in order that they

may continue controlling evidence it must appear that they
have been preserved in the manner and by the officers
prescribed by the statute. (*Hudson v. Solomon*, 19 Kan.,
177.) In the case cited it is said: "It is a primary rule of
elections that the ballots constitute the best, the primary
evidence of the intentions and choice of the voters. (*State
v. Judge*, 13 Ala., 805; *People v. Holden*, 28 Cal., 123;
McCrary, Elections, secs. 291, 439; Cooley's Const. Lim.,
625.)

In the case from California the court uses this language:
"Intrinsically considered, it must be conceded that the bal-
lots themselves are more reliable, and therefore better evi-
dence, than a mere summary from them. Into the latter
errors may find their way, but with the former this cannot
happen. The relation between the two is at least analo-
gous to that of primary and secondary evidence." A can-
vass is but a count of the ballots, a convenient and expe-
ditious method of determining the choice of the people as
disclosed by the ballots, and therefore but secondary evi-
dence. The necessities of the case make it *prima facie*
evidence, but unless expressly so declared by statute it is
never conclusive. (*State v. Marston*, 6 Kan., 524; *Russell
v. State*, 11 Id., 308.)

As between, therefore, the ballots themselves and a can-
vass of the ballots, the ballots are controlling. This is, of
course, upon the supposition that we have before us the
very ballots that were cast by the voters. And this pre-
sents the difficult question in this case. For, as under the
manner of our elections, there is nothing to distinguish one
ballot from another of those cast by the members of the
same party, as no file-mark or other mark is made in the
canvass or otherwise after the election upon any ballot, by
which its actual use at such election may thereafter be
established, and as at any election there is always a large
surplus of unused ballots, it is evident that if opportunity
were offered ballots might be withdrawn from the box and

others substituted, with but little chance of detection. Thus in the case before us, if there was but a single officer to elect, and but a single name on the ballot, how easily could one having access to the box throw in twenty-three or four additional ballots, and thus bring about the very difference that appears before us now. And who could thereafter tell which were actually voted, and which subsequently thrown in? The ballot, then, upon its face containing no marks of identification, we must look *aliunde* for evidence of the identity of those offered and counted before us with those actually cast at the election. And this evidence we find in the testimony as to the manner in which the ballots have been preserved, a comparison of the canvass made as to all the officers voted for at that election, with the result as shown by the ballots, and certain other circumstantial evidence; and it was held that the proof in regard to the safe keeping of the ballots in that case was sufficient to admit them as evidence.

The question was again before the supreme court of that state in *Dorey v. Lynn*, 31 Kan., 758, and it was held, "Where an election is held in a certain ward of a city for the election of councilmen, and the judges and clerks of the election count the ballots and place them in a sealed envelope, and then place the envelope with the ballots in the ballot box, and seal the ballot box and deliver the same to the city clerk, in whose custody they remain until the trial is had in the case, and this is shown by testimony of witnesses beyond all reasonable doubt, held, that the ballots are sufficiently identified and are controlling, although the city council, while acting as a board of canvassers did, in the presence of the city clerk, illegally open the envelope containing the ballots and count them."

These cases, in our view, state the law correctly. In the case at bar the proof fails to show that ballots from three of the precincts were preserved in the manner and by the officers prescribed by the statute.

If the loose methods which were adopted in this case as shown by the proof were held sufficient, it would be possible to change the result of any election and defeat the choice of the electors. It would have been an easy matter for a person so disposed to place one or more crosses opposite the proposition for or against township organization and thus render the ballot inoperative, and the very large number, viz., 136, with two crosses thereon, is suggestive of improper practice, particularly as no mention is made thereof by the various election boards. It is not very creditable to an official that the papers and ballots in his office are so carelessly kept that persons having no right to have access to them may handle or inspect them if they see fit, and the circumstances are such as to cast suspicion upon them. The court did not err, therefore, in rejecting the ballots.

Third—But it is claimed on behalf of the plaintiff that the several acts providing for township organization are unconstitutional and therefore void. The legislature of 1877 passed an act providing for township organization in certain cases. This act was declared invalid in *Jones v. Co. Com. of Lancaster Co.*, 6 Neb., 474, upon the ground that the title of the act was too restricted for the subject-matter of the act.

The revenue law of 1879 was amended so as to provide for the collection and disbursement of taxes in case of the adoption by any county of township organization. While it is true that there was no statute in existence at that time that authorized township organization, yet the provision above referred to in no manner affected county organization or the collection of the revenue, and could only become effective upon the adoption by any county of township organization.

In 1883 an act was passed to provide for township organization, and that, with the amendments thereto, constitute the law upon that subject at the present time. It

is claimed, however, that the act of 1891 repealed by implication the township act of 1883.

The question of repeal by implication has been presented to this court in several cases and it has been uniformly held that a statute would not be repealed by implication unless the repugnancy between the new statute and the old is plain and unavoidable. (*White v. Lincoln*, 5 Neb., 505; *State v. McCall*, 9 Id., 203; *In re Hall*, 10 Id., 537; *Lawson v. Gibson*, 18 Id., 137; *State v. Babcock*, 21 Id., 599.) The statute of 1891 does not repeal the former act by implication.

Fourth—It is contended that section 7 of the election law as amended in 1891 repeals the provision for election of supervisors. In our view, however, the act in question merely provides for future elections and does not change the law in relation to election for township officers on temporary organization. There is no error in the record and the judgment is

AFFIRMED.

THE other judges concur.