## JOHN C. MURPHY

### *v.*

## JAMES W. BATTLE.

*Filed at Ottawa April 1, 1895.*

1. ELECTIONS—*construction of Ballot law—when separate columns need not be used.* Under the Ballot law of July 21, 1891, a separate column need not be used on the official ballot for each candidate nominated by petition, but such candidates may be placed in groups by the officer who provides the ballots, under a designation made by him.

2. SAME—*neglect of clerk will not affect a ballot properly marked.* The result of an election will not be affected by the erroneous action of the clerk in failing to place the names of the independent candidates nominated by petition, in one column, where the voter has indicated his choice in pursuance of law.

3. SAME—*re-count disregarded where ballots are not preserved.* The result of a canvass made by judges of election, in accordance with law, will not be disturbed on a re-count, where the ballots have not been preserved and guarded from interference in the manner prescribed by law.

4. SAME—*value of original ballots in determining results.* The value of the original ballots, as determining the result of a contested election, depends upon the care with which they have been preserved and upon their not having been changed.

5. ESTOPPEL—*installation does not estop incumbent from contesting.* Participation by an alderman in the installation of one receiving a certificate of election as his successor does not estop him from contesting the latter's right to office, where he had no knowledge of the correctness of the canvass by which the result of the election was determined.

APPEAL from the County Court of Kane county; the Hon. D. B. SHERWOOD, Judge, presiding.

N. J. ALDRICH, and SAMUEL ALSCHULER, for appellant:

Where there is no substantial compliance with the requirements of the law in regard to the preservation of the ballots, the ballots will not be allowed in evidence, or if allowed, their force as evidence is much impaired, and the burden of establishing their integrity is upon the contestant. *Coglan* v. *Beard*, 65 Cal. 58; McCrary on Con-

tested Elections, 209, 249; *People* v. *Livingston*, 79 N. Y. 290; *Newton* v. *Newell*, 26 Minn. 529; *Hudson* v. *Solomon*, 19 Kan. 177; *Powell* v. *Holman*, 5 Ark. 85; Cooley's Const. Lim. 625; *Coveny* v. *Hale*, 49 Cal. 552.

In our State there is no case which seems to be exactly in point. The one nearest which we have been able to find is that of *Kingery* v. *Berry*, 94 Ill. 515.

R. G. MONTONY, and CHARLES WHEATON, for appellee:

Any irregularities or omissions by the board of election, or canvassers of the returns, or custodian of such returns, to discharge the duties imposed by law, will not deprive the one elected of his right to the office, if such right can be determined by the votes cast. *People ex rel.* v. *Nordheim*, 99 Ill. 553; *County of Lawrence* v. *Schmaulhausen*, 123 id. 321.

When the ballots are preserved so that their identity is assured and they can be counted during a contest, they are undoubtedly better evidence of the vote cast than the returns, and should prevail where there is a difference. 6 Am. & Eng. Ency. of Law, 428, note 4; *Newton* v. *Newell*, 26 Minn. 529; *State* v. *Judge*, 13 Ala. 805; *Reynolds* v. *State*, 61 Ind. 392; *Dorsey* v. *Lynn*, 31 Kan. 758; *Owens* v. *State*, 64 Texas, 500.

Where the statute provides that the ballots shall be kept in a certain way, and they are in the hands of the proper officer, it is presumed that he has done his duty, and the burden of proof is upon those assailing them to show that they might have been tampered with. *People* v. *Holden*, 28 Cal. 123; *Kingsley* v. *Berry*, 94 Ill. 515.

In order to create an estoppel there must have been a representation concerning material facts, and the representation must have been made with a knowledge of all the facts. *People* v. *Brown*, 67 Ill. 435.

The doctrine of *estoppel in pais* is based on a fraudulent purpose or a fraudulent result, and it can only be set up as a means to prevent injustice. ·*Flower* v. *Elwood*, 66 Ill.

438; *Dorlarque* v. *Cress*, 71 id. 380; *Chandler* v. *White*, 84 id. 435; *Thomas* v. *Bowman*, 29 id. 426; *Powell* v. *Rogers*, 105 id. 318.

Mr. JUSTICE PHILLIPS delivered the opinion of the court :

At an election for city officers in the city of Aurora, on April 18, 1893, four persons were voted for as candidates for the office of mayor, viz., John C. Murphy, James W. Battle, John R. Callan and S. C. Shepardson. A convention was held by citizens, who nominated a ticket, which was certified to the clerk, and in the manner of nomination that ticket was designated as the ticket nominated by the "People's Party." For mayor John C. Murphy was the nominee, and others were named for other city officers to be elected. This was certified to by the chairman of the convention and by its secretary. There was also filed with the clerk a petition, signed by the requisite number of voters of the city, making Murphy the nominee of the people's party. There were also petitions filed making nominations, by petition, for city clerk, city attorney, clerk of city court and city treasurer, each candidate being designated as the candidate of the people's party. A convention was held by the prohibition party, at which Shepardson, as candidate for mayor, and other candidates for other offices, were nominated, who were duly certified as candidates of that party. On the petition of the requisite number of citizens and voters, James W. Battle and John P. Callan became candidates for mayor, and other candidates for other offices were nominated by petition. There were four candidates for mayor, three candidates for city clerk, two candidates for city treasurer, three candidates for city attorney, one for clerk of the city court, and numerous candidates for aldermen for the different wards. The tickets as made up by the clerk and printed had the candidates nominated by the prohibition party conven-

tion under that designation. The candidates nominated by the designated people's convention, and which also filed nominations by petition under that designation, were printed under the designation of "People's Ticket." The name of Battle for mayor, with that of Barker for clerk and Weaver for city attorney, was printed under the designation of "Citizens' Ticket," and the names of Callan for mayor and Galvin for city attorney were printed under the designation of "Independent Ticket." To the left of each one of the titles was printed a ring, and to the left of each candidate's name a square, in accordance with the act in force July 21, 1891. At the election ensuing, from the returns as made, which, upon their face, seemed to be regular, it appeared that for the office of mayor, Murphy received 1483 votes, Battle received 1479 votes, Callan received 786 votes, and Shepardson received 52 votes, and Murphy was declared elected, and proceeded to act as mayor. Battle filed his petition to contest the election, and a re-count of the ballots was had, by which it was determined by the court that the contestant was elected mayor by a plurality of 26 votes. From the judgment of the court on that contest this appeal is prosecuted.

Two questions are presented which are vigorously urged. The first is, whether, where the tickets were so made up and printed by the clerk, and a voter marked with a cross the circle opposite the designation "Citizens' Ticket," the ballot should be counted for appellee; and second, whether in the manner in which the ballots were folded, strung, tied, sealed, kept and secured, they should have been received in evidence.

By section 14 of the act of 1891 it is provided : "The names of all candidates to be voted for in each election district or precinct shall be printed on one ballot, all nominations of any political party or group of petitioners being placed under the party appellation or title of such party or group as designated by them in their certificates

of nomination or petitions, or if none be designated, then under some suitable title. * * * The list of candidates of the several parties and groups of petitioners shall be placed in separate columns on the ballot, in such order as the authorities charged with the printing of the ballots shall decide." The duty is imposed on certain officers, by section 15 of the act, to provide the ballots, which are made subject to inspection by candidates and their agents, that mistakes may be corrected.

Where candidates are placed on the ticket by certificate of nomination or petition, and no title is designated in the petition or certificate, then, by the express provisions of the statute, the officer whose duty it is to prepare the ballots may place their names under some suitable designation, and by use of the term "groups of petitioners," it is apparent that the legislature did not intend to require that a separate column should be used for each candidate whose name was placed on the ticket. The fact that such names were not placed in one column would not defeat the intention of the voters.

When a group of candidates are placed on the ticket under a designation made by the officer who provides the ballots, the voter who desires to vote for a group of candidates who are on the ticket by petition, may mark the circle at the appropriate place preceding the appellation or title under which the names of the group of petitioners are printed, and the ballot so marked shall be counted as cast for all of the candidates named under that title, by the express provisions of section 23 of the act. Heading one column on the ballots, as printed, was the designation "Citizens' Ticket," and the ballots, when marked in the circle opposite that designation, were properly counted for all candidates whose names were printed thereunder on that ticket, and however the action of the clerk may have been erroneous in failing to place the names of all independent candidates nominated by petition in one column, after an election the will of the ma-

jority is not to be defeated by an informality in printing ballots, where the voter has indicated his choice in pursuance of law.

By section 27 of the act under which this election was held, it is provided that when the canvass of ballots, as now provided by law, has been made, proclamation shall be made of the number of votes received by each of the persons voted for, etc., and the act further provides: "Immediately after making such proclamation, and before separating, the judges shall fold in two folds, and string closely upon a single string of flexible wire, all ballots which have been counted by them, except those marked 'Objected to,' unite the ends of such wire in a firm knot, seal the knot in such manner that it can not be untied without breaking the seal, enclose the ballots so strung in an envelope, and securely tie and seal such envelope with official wax impression seals to be provided by the judges, in such manner that it can not be opened without breaking the seals, and return said ballots, together with package containing the ballots marked 'Defective or objected to,' in such sealed package or envelope, to the proper clerk or to the board of election commissioners, as the case may be, and such officer shall carefully preserve said ballots for six months, and at the expiration of that time shall destroy them by burning, without previously opening the package or envelope."

The statute as to stringing the ballots is merely directory, and the purpose is preservation and secrecy. The duty of canvassing the ballots is imposed by law on the judges of election, and that duty is one that cannot be properly delegated by them to others, and when that duty is discharged the statute above quoted directs the manner of preserving and returning the ballots. The credit to be given the canvass of the judges of election is measured by their compliance with their duty. In this case it must be admitted that in the manner of counting the ballots and determining the result of the

election the judges of election were in some cases exceedingly and carelessly negligent, as shown by this evidence. The ballots of the third ward, as returned, were not contained in any envelope, and there was no wire or string through them. In the fourth ward the ballots were not strung, but carried to the clerk's office in the ballot box, after they had been counted, and at the clerk's office were placed in envelopes and sealed up. On being returned to the clerk in this condition they were not kept by him with that care that his duty required. Their value as evidence depended largely on the manner in which they were returned and preserved. The manner in which that was done and the condition in which the ballots were produced to the court, as shown by this evidence with reference to the third and fourth wards of the city, show such facts that, had the canvass been made by the judges of election in accordance with their duty, we would not be willing to allow to be disturbed the original result of the canvass.

The evidence shows that in the third and fourth wards of the city, after the polls were closed, the ballots were divided, and each judge and each clerk counted certain ballots separately and announced the result, and the aggregate was marked on the tally sheet, and no marks were made on the tally sheet until all the votes had been counted in the manner indicated, and the separate counting was in no way verified. The count in these wards, on the contest, changed the result of the election from what had been announced by the judges of election at the polls, and from the canvass as made by the city council, which was declared from the summary of the tally sheets. The negligence of the clerk of the city in preserving these ballots is only equaled by the negligence of the judges of the third and fourth wards in the discharge of their duties as judges of election. The canvass and announcement of the vote by the judges of election is not of so high a character of evidence as the

ballots themselves, in determining the result of an election.   The value of the ballots depends on the care with which they have been preserved and of their not having been changed.   The negligence and carelessness of the judges of election in the third and fourth wards rendered their count of the votes deserving of but little credit, and the evidence which showed to the satisfaction of the trial judge that the ballots had not been tampered with, and on which he based his finding, causes the question presented by this record on this point to be so purely one of fact that we are not disposed to disturb the judgment of the county court.

It is further urged, that as appellee was an alderman and member of the city council when the result of the election was announced, and participated in the installation of appellant, he is estopped from contesting his right to the office.   Appellee is not shown to have had knowledge of any of the facts or circumstances that would have suggested a doubt as to the correctness of the canvass at that time, and this latter contention has no merit.

Upon the record the judgment must be affirmed.

*Judgment affirmed.*