## F. M. DAVENPORT, Contestant and Appellant, v. A. T. OLERICH, Incumbent.

**Election Contest:** BURDEN OF PROOF. Where an official count has been made, it is better evidence of who was elected than the ballots, unless he who discredits the count shows affirmatively that the ballots have been preserved with a care which precludes the opportunity of tampering and all suspicion of change. abstraction or substitution.

RULE APPLIED. Ballots cast were placed in the custody of the auditor until removed to that of the clerk under the order of

court. They were properly protected, except those from two precincts, which were wrapped in paper, and placed on the floor under the table in the vault in the auditor's office, where the inmates of the office did not at all times have them in sight Some of these packages were unsealed, and the seals of others were broken At one time three of the packages were mislaid; the vault in. which they were placed was left open, and many people had access thereto. *Held*, that the ballots had not been so preserved as to be competent as evidence for the purpose of overthrowing the official count.

*Appeal from Carroll District Court.*—HON. Z. A. CHURCH, Judge.

SATURDAY, DECEMBER 18, 1897.

ELECTION contest for the office of county attorney. From judgment declaring the incumbent entitled to the office, the contestant appeals.—*Affirmed.*

*F. M. Davenport pro se,* and *M. W. Beach* for appel lant.

*B. I. Salinger* for appellee.

LADD, J.—The board of supervisors, as county canvassers, found Olerich duly elected to the office of county attorney of Carroll county at the general election of 1896. This finding was contested by Davenport, and the court of contest, organized under the statute, decided that Davenport had received more votes than Olerich, and was entitled to the office. Olerich appealed to the district court, where it was held "that the ballots offered in evidence in this cause were preserved so carelessly as to expose them readily to fraudulent alterations, abstraction, substitution and destruction; and that the finding made by the board of supervisors of Carroll county, Iowa, acting as a board of canvassers, that A. T. Olerich was duly elected county attorney * * * is better evidence than the said

ballots." Subject to this conclusion, the court found Olerich to have received a majority of the votes cast, and to have been duly elected.

I. The ballots, when properly authenticated, afford the very best evidence of who has been chosen by the electors to perform the duties of an office. But before these may be received or considered, it must affirmatively appear that they have been preserved with that jealous care which precludes the opportunity of being tampered with, and the suspicion of change, abstraction, or substitution. McCrary, in his work on Elections (page 209), says: "Before the ballots should be allowed in evidence to overturn the official count and return, it should appear affirmatively that they have been safely kept by the proper custodian of the law; that they have not been exposed to the public, or handled by unauthorized persons; and that no opportunity has been given for tampering with them." The same rule is laid down in Cooley, Constitutional Limitations, 625, and approved by the following authorities: *Coglan v. Beard,* 65 Cal. 58 (2 Pac. Rep.) 737); *Albert v. Twohig,* 35 Neb. 563 (53 N. W. Rep. 582); *Newton v. Newell,* 26 Minn. 529 (6 N. W. Rep. 346); *Hartman v. Young,* 17 Or. 150 (20 Pac. Rep. 17); *Powell v. Holman,* 50 Ark. 85 (6 S. W. Rep. 505); *People v. Livingston,* 79 N. Y. 290. After the election it is known how many ballots must be interfered with in order to affect the result, and, before any are received against the finding of the duly authorized board of canvassers, their genuineness should be fully established. As said by Church, C. J., in *People v. Livingston, supra:* "The returns may be impeached for fraud or mistake, but in attempting to remedy one evil we should be cautious not to open the door to another, and far greater, evil. After the election it is known just how many votes are necessary to change the result. The ballots themselves cannot be identified; they have no earmarks. * * *

Every consideration of public policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact that the ballots are genuine. ֊ * * * If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but, if not, they are not only the weakest, but the most dangerous evidence." The rule is recognized, rather than abrogated, in *Furguson v. Henry*, 95 Iowa, 439. Our statute provides that: "The judges shall fold in two folds, and string closely upon a single piece of flexible wire, all ballots which have been counted by them, except those marked 'Objected to,' unite the ends of such wire in a firm knot, seal the knot in such manner that it cannot be untied without breaking the seal, enclose the ballots so strung in an envelope and securely seal such envelope in such a manner that it cannot be opened without breaking the seal, and return said ballot, together with the package, with the ballots marked 'Defective' or 'Objected to,' in such sealed package or envelope, to the proper auditor, clerk or recorder, as the case may be, from whom same were received, and such officer shall carefully preserve such ballots for six months, and at the expiration of that time shall destroy them, by burning without previously opening the package or envelope." Section 25, chapter 33, Acts Twenty-fourth General Assembly. It is also provided that, in event of contest, such ballots "shall be opened only in open court, or in open session of such body, and in the presence of the officer having the custody thereof." It will thus be observed that the strictest vigilance in the care and preservation of the ballots is enjoined by the legislature, and the possibility of any interference with them carefully guarded against. Security of the ballot after being cast is quite as important as freedom in casting it, if the result as finally announced shall represent the actual choice of the electors. To this end we hold, in harmony with the

authorities cited, and the evident purpose of the legislature, that the onus is on him who would discredit the official count, before resorting to the ballots as the best evidence of who has been elected, to show that these have been preserved with that care which precludes the suspicion of having been tampered with, and the opportunity of alteration or change.

II.   The parties agreed that of the ballots cast contestant received two thousand, and sixty-three, and the incumbent two thousand and thirty-three, and these were separated from the rest, and only those remaining submitted to the court; that the ballots cast were placed in the custody of the auditor, and removed to that of the clerk under the order of court; but the incumbent did not waive objections to the identity of the ballots, and that they were not the best evidence. He expressly reserved the right to urge these, and still insists upon them. It appears that the ballots were returned to the auditor by the proper election officers, in sacks prepared for the purpose, except those from two precincts, where they were wrapped in papers, and tied up in wires, with ends sealed. All were placed on the floor under the table in the vault of his office. Four or five packages were unsealed, but were tied with wire or cotton strings. The seal of another package had been broken, and partly torn open. At one time only seventeen of the twenty packages were to be found, but subsequently the remainder were discovered locked in ballot boxes, under the table, as returned by the judges of election. In taking one sack out, it was pulled nearly open, and so left. These ballots remained in this condition until taken before the court of contest. The vault was so situated that the auditor or his deputy could observe the ballots from only a portion of the office. After the trial before the court of contest, the sacks, without being again sealed or protected in any way, were again placed under the

table and there remained until transferred to the clerk of the district court. During all this time people generally had access to the vault, and were allowed to examine the records, and do their work therein, unaccompanied by any one. From this state of facts, established on the trial, it appears that ample opportunity was offered to tamper with the ballots. It is idle to say they were continually under the notice of the custodian whose duty it was to guard them. His attention was diverted by his work, much of which was performed where necessarily ignorant of what was going on in the vault. Individuals remained therein alone considerable time nearly every day. If evily disposed, the ballots at such times were not safe. The auditor was not responsible for the condition of the ballots when delivered to him, but, owing to their condition, was required to exercise greater precaution for their care and protection. This could have been done by re-sealing, or by placing securely under cover. The duty of preserving the ballots is not a negative one of non-interference, but a positive requirement to do whatever may be necessary in order to accomplish the purposes of the law in keeping them inviolate. The court rightly ruled that the ballots, not having been properly preserved, were not competent as evidence for the purpose of overthrowing the official count.— AFFIRMED.