## MOSS v. HUNT.

No. 5150.   Opinion Filed September 9, 1913.

Rehearing Denied October 7, 1913.

(135 Pac. 282.)

1.  **ELECTIONS—Contest—Parol Evidence.** Where the certificate of returns has not been executed by the officers of an election precinct, as prescribed by section 3084, Rev. Laws 1910, and where the ballots have not been kept by the precinct officers and preserved for delivery to the county election board in the manner prescribed by the statute, and such ballots have been so exposed as to afford an opportunity and a reasonable probability of their having been changed or tampered with, parol evidence of the judge of the election of such precinct as to the result of the election in that precinct, as shown by the tally sheets at the close of the count of ballots, and parol evidence of bystanders as to the result declared by the election inspector, or shown by a statement made by him at the close of the count, is admissible.

2. **SAME—Question of Fact.** Where such parol evidence as to the result of the election in such precinct conflicts with the result as shown by the ballots, which have been handled in such irregular manner by the precinct election officers as to afford a reasonable probability of their having been changed or tampered with, whether such ballots are the identical ballots as cast by the voters, and what was the result of the election in said precinct, are, under all the evidence, questions of fact for the jury or for a court sitting as a trier of the facts.

(Syllabus by the Court.)

*Error from District Court, Wagoner County;*
*R. C. Allen, Judge.*

Action by W. B. Moss against W. T. Hunt. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*Robert E. Blair (Henry M. Brown,* of counsel), for plaintiff in error.

*Watts & Watts, Edward M. Gallaher,* and *Owen & Stone,* for defendant in error.

HAYES, C. J. Plaintiff in error, hereinafter called plaintiff, commenced this proceeding in the district court of Wagoner county to contest the election of defendant in error, hereinafter called defendant, to the office of county judge of said county at the general election held on the 5th day of November, 1912.

In the district court a demurrer to plaintiff's evidence was sustained, and judgment rendered in favor of defendant. At said election plaintiff was the nominee and candidate of the Republican party to the office of county judge, and defendant was the nominee and candidate of the Democratic party, and one E. L. Moore was the candidate of the Socialist party, for said office. There are 22 election precincts in the county. In accordance with the canvass of the votes made by the county election board, plaintiff received 737 votes, defendant 787, and the Socialist candidate 382. A certificate of election was accordingly issued by the county election board to defendant, who now occupies the office. The election board did not count any votes cast at precincts Nos. 6, 8, 14, and 16. At precinct No. 14 no election was held. The votes from the other precincts were not canvassed because of

the manner in which the returns had been made by the precinct election boards, which, in the minds of the county election board, constituted such irregularity as did not authorize them to make a canvass thereof.

At the trial the returns from these precincts were opened, and a canvass of the votes thereof made, either from the certificates of returns of the precinct officials, or by a count of the ballots, and as a result thereof it was shown that plaintiff had received 914 votes, and defendant 926 votes. In arriving at this total of the votes cast for the respective candidates, however, 50 votes were counted for defendant and 34 votes for plaintiff, as shown by a purported certificate of returns of the election officers from precinct No. 5.

Plaintiff contends that the returns from said precinct No. 5 were in fact never executed by the officers required by law to execute them; that they were falsely and fraudulently made, and therefore they could not be considered as evidence to establish the votes cast for the respective candidates. He also contends that the ballots were handled in such a manner and with such irregularities by the election officials as to discredit them, and render them not the best evidence of the votes cast. In order to secure an opening of the ballot boxes and of the returns from precincts 6, 8, and 16, and a consideration of same by the court in arriving at the total votes cast for the respective candidates in those precincts, plaintiff introduced a great deal of testimony to show that said returns had been in the hands of the proper officials, and had been so preserved since the same had been received and canvassed by the county election board that their identity was beyond question, and that such ballots and returns could be considered by the court. This evidence was held by the trial court, and we think correctly, to be sufficient to entitle the ballot boxes from said precincts to be gone into, and the returns and ballots therefrom considered. It was also agreed by plaintiff that the same evidence should apply as to the returns and ballots from precinct No. 5; but this agreement extends only to the manner in which the returns from precinct No. 5 were kept after the same reached the county election board. It is not the contention

of plaintiff that their identity was destroyed by conduct of the county election board, but by the acts of the precinct election officers.

By the statute, the election board of each precinct is required to appoint four official counters, not more than three of whom shall be from the same political party. Two of the official counters, who must be of different political parties, are required to call from the ballots the names of the candidates voted. for, while the other two record the votes at the same time upon different tally sheets provided for that purpose. When the votes. have all been called, and count made upon the tally sheets, the four counters are required to sign the tally sheets. After they have signed same, it becomes their duty to fill out the certificate in the back of the book of ballots, without detaching it from said book, and to make at least three duplicates of such certificate. Each certificate shall have only the total vote of each candidate, which shall be written with pen and ink in words and figures. Each of these certificates must be signed by each of the four counters, and sworn to before one of the precinct board. All ballots, when they have been counted, are required to be strung upon a twine string, and the two ends of the string brought together over such ballots and tied together by the counters; a piece of stiff paper placed under each knot, and the knot then sealed with sealing wax and stamped with the election seal of the precinct by the precinct board in the presence of the counters. It then becomes the duty of the counters to place said ballots thus tied in a bundle into an envelope, labeled "Voted Ballots," and to seal said envelope by moistening the gummed flaps. After they have been thus sealed, they are required to place the seal of sealing wax upon such gummed flaps and in the center of such and imprint thereon the precinct election seal. When these duties have been performed by the official counters, it then becomes the duty of the clerk and judge to write their names across the gummed flaps of the envelope, one upon one side of such wax seal, and the other upon the other side. Sections 3077, 3088, Rev. Laws 1910.

Counsel for plaintiff in the court below, in presenting his evi-
dence in support of his case, recognized the rule of law that the
returns of the precinct election officials, when executed by them in
the manner prescribed by the statute, are *prima facie* evidence of
the votes cast for each of the candidates, but that this *prima facie*
evidence may be controlled and overcome by the ballots cast
at the election in a precinct, when the ballots have been preserved
in the manner and by the officers prescribed by the statute, and
have not been exposed to the reach of unauthorized persons so as
to afford a reasonable probability of their having been changed or
tampered with. He introduced a great volume of evidence to
impeach the purported returns from precinct No. 5. His evi-
dence shows that, when the counters appeared at about twelve
o'clock on the date of the election, they were requested then by
one Fayette Wertz, the election inspector of that precinct, to
sign up the tally sheets, and to execute the certificate of returns
in the back of the book of ballots. To this request objections
were made by some of the counters, that the votes had not been
counted, and the returns had not been made out. But the in-
spector insisted upon their being signed by the counters at that
time, which was done. When the canvassing of the votes had
been completed by the counters, and the same had been marked
upon the tally sheets, before the total vote had been made out
upon the tally sheets by the counters, the tally sheets were
gathered up by the inspector, and thereafter the certificate of re-
turns in the back of the ballot book was made out by him, with-
out the assistance or support of the official counters, or without
their knowledge of its contents, and there is contradiction in the
testimony as to whether the duplicates required by the law were
ever made out. There is evidence to the effect that a day or so
after the election the election inspector was seen making out such
certificate in blank certificates that had been signed up by the
counters, and upon inquiry he answered that he was making out
such certificate because the requisite number had not been made
out.

By the purported certificate from precinct No. 5, returned
to the county election board, it is shown that defendant received

50 votes and plaintiff 34. The court decided, and counsel for defendant in error at the trial conceded, that this certificate of returns had been impeached and destroyed by the irregularities of the inspector and counters, shown by the evidence of plaintiff. In this conclusion they were correct, for the certificate had never been executed by the officers designated by law to execute same, but by another person who was without authority in the premises. It did not constitute a record of the precinct election board, and therefore was not *prima facie* evidence of the result of the election. After it was agreed that the certificate of returns from precinct No. 5 had been impeached, the court thereupon ordered that the ballots from that precinct be opened and counted. Plaintiff thereupon stated his position relative to the introduction of said ballots and the counting thereof in the following language:

"Now, then, we allege in our petition that the ballots have also been tampered with, and that instead of showing the number of ballots which were cast, and the electors who cast them, that the ballots have been increased in favor of the defendant from 39 to 50, and decreased from 37 for the plaintiff down to 34. We have proven enough before this court to destroy the evidential value of those ballots. Now, I am asking by parol testimony *aliunde* the record to establish the truth with respect to the votes cast for the plaintiff and defendant, independent of that corrupt and fraudulent record, and I am simply asking the question this morning of the judge (referring to the judge of election precinct No. 5) who says he knows, who says he took it down from the tally sheet at the time it was made the truth with respect to the number of votes cast for the plaintiff and defendant."

The court thereupon ruled that the ballots might be gone into by agreement of both parties, with the understanding that plaintiff might impeach the ballots in the event he could do so by parol testimony. To this counsel for plaintiff agreed and the envelope containing the ballots was opened, and, upon being counted in open court, counsel for plaintiff made the following statement:

"Now, the plaintiff is putting on his proof, your honor, and the plaintiff does not introduce these records. I want the record

to show affirmatively that the plaintiff declines to introduce the record, and now in open court offers to attack them by fraud, which is alleged in his petition, by oral evidence *aliunde* the record. If they wish to introduce the record, they may do so."

The ballots counted in open court show that defendant received 50· votes and plaintiff 34. After the ballots had been counted, plaintiff proceeded to establish by the testimony of the judge of the election, who counted the votes from the tally sheets of the counters, just after the canvass of votes had been completed, that the number of votes received by plaintiff was 37 and by defendant 39. He also established by other witnesses that immediately after the canvass of the votes, and while the tally sheets were in possession of the election inspector, Wertz, he made memorandum for such witnesses, or gave a statement to them that the number of votes received by plaintiff and defendant were as is contended for by plaintiff. The only evidence in the record as to the number of votes these respective candidates received in election precinct No. 5, as is contended for by defendant, is the purported certificate of returns, which the parties agreed had been impeached, and which constitutes no evidence in this case. The testimony of the election judge and of other witnesses who received a statement of the votes from the election inspector as to the result immediately after the canvass was completed supports plaintiff's contention as to the number of votes cast for each candidate in the precinct. The purported ballots of the precinct show the number of votes for the respective candidates, as contended for by the defendant. The result of the election depends upon the vote in this precinct.

The sustaining of the demurrer to plaintiff's evidence constitutes the error urged for reversal of the cause. There was no evidence introduced by defendant. There is no evidence supporting the contention of defendant upon which the demurrer could have been sustained, unless the ballots were introduced in evidence in this case for the purpose of establishing the number of votes cast for the respective candidates. If such ballots were in evidence for the purpose of establishing the number of votes each candidate received, they are controverted by evidence

from the judge of the election precinct and other witnesses, most of which was admitted without objection, and a demurrer to the evidence should not have been sustained, unless the ballots constitute the controlling evidence. We are of the opinion that the ballots were not in evidence for this purpose. They were never offered by plaintiff, and were ordered counted by the court, with the agreement that they were not the testimony of plaintiff, but introduced only that he might impeach them. This course was evidently taken for the purpose of laying a predicate to introduce the testimony of the election judge and by-standers as to the number of votes cast at the election. Plaintiff made it plain that he relied neither upon the election returns nor upon the ballots to establish the correct number of votes cast for each candidate at this precinct. The election returns, unimpeached, constituted *prima facie.* evidence of the votes cast. After it was shown that there were no election returns executed by the officers, as required by law, the ballots were the best evidence and the only evidence plaintiff was entitled to introduce, unless he showed that they could not be properly identified, and that they had been handled in such a manner as rendered them subject to be tampered with, and a reasonable probability that they had been tampered with. Upon showing these facts, it was competent for him to introduce the testimony of the election judge, and of those who were present at the time the result of the election was stated by the election inspector, to show the number of votes each candidate received. *Stemper v. Higgins,* 38 Minn. 222, 37 N. W. 95; *Kingrey v. Berry,* 94 Ill. 515; *Merritt v. Hinton,* 55 Ark. 12, 17 S. W. 270; *Albert v. Twohig,* 35 Neb. 563, 53 N. W. 582; *Murphy v. Battle,* 155 Ill. 182, 40 N. E. 470.

Mr. Justice Brewer, in *Hudson v. Solomon,* 19 Kan. 177, laid down two cardinal rules governing elections and election contests in the following language:

"(1) As between the ballots cast at an election and a canvass of these ballots by the election officers, the former are the primary, the controlling, evidence. (2) In order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so

exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with."

No canvass of the ballots of precinct No. 5 was certified by the officers required by law to certify same to the county election board, and the votes the respective candidates received at that precinct could not be established by the returns. If plaintiff had desired to establish his case by the ballots, the burden would have been upon him to show, before he could introduce them, that they had been preserved in the manner and by the officers prescribed by the statute, and had not been exposed to the reach of unauthorized persons so as to afford a reasonable opportunity of their having been changed or tampered with. If this burden would be upon him, if he had tried to avail himself of the ballots as evidence, he certainly would not be charged with the duty of introducing them and making them his evidence to be considered against him, when he showed that they had not been so preserved, and that they had been exposed so as to afford an opportunity to be tampered with, and when he contended that they had been changed against his interest. But, eliminating the foregoing question, and assuming that these ballots are in evidence, introduced by plaintiff for the purpose of showing the number of votes the respective candidates received at precinct No. 5, we are of the opinion that, on account of the manner in which they were kept, they have lost their character as controlling evidence. They were not placed in an envelope by the counters, as required by the statute; they were not sealed upon a string by the counters; and no envelope was ever sealed by them. No wax seal was ever placed upon the envelope, nor were the names of the election officers indorsed thereon. If they were ever placed in an envelope before they were taken away from the polling place, they were placed there by the inspector, and there is evidence to the effect that they were never placed in the envelope by anybody, but that the entire supplies were dumped into the ballot box. There is evidence tending to show that the ballot box had been opened by the inspector after it was closed.

Only one tally sheet was returned by the inspector to the county election board, which was the tally sheet kept by the counter of the same political party as plaintiff. The other tally sheet is gone, and cannot be accounted for. The tally sheet preserved bears evidence of having been altered by the number written first opposite the name of plaintiff having been scratched out, and a smaller number written instead. It is true the inspector who made this alteration and wrote the smaller number attempts to explain it; but this election inspector is of the same political party as defendant, in favor of whom the change appears. Throughout the entire day the inspector showed a disposition to disregard the requirements of the law as to the manner prescribed by the statute for making up and certifying the returns. His disregard of the law may have been due to ignorance of its requirements; but, if so, it appears to have been, in a large measure, a willing ignorance, for, when his attention was called during the day to the statute relative to other matters, he expressed a contempt for the law, and, in effect, asserted that his authority was superior to the law.

The manner in which these ballots were handled after they left the hands of the counters affords no secure protection against their being altered by an interested or a partisan inspector, although they never passed from his hands to those of any other person. There is no number or mark upon the ballot as cast by the voter under the law by which the ballot can thereafter be identified. Owing to the manner in which these ballots were handled after they were counted by the official counters, it would have been an easy matter, if they were ever placed in an envelope before they were taken from the polling place, for the election inspector to have opened the envelope, taken or removed a portion of the ballots from the unsealed string, substituted other ballots, or, by the use of a stencil, to have stamped the cross in the square opposite the name of defendant upon those ballots where voters voted for neither candidate, and by such means increased the vote of defendant. We do not say from the evidence that he did so; but to hold that these ballots, under the conditions under which they have been kept and preserved by the

election inspector, are controlling as to the number of votes cast for the respective candidates would be to adopt a rule that would lend encouragement to a practice that would bring suspicion upon the purity of every election. The irregularities of the election officers in precinct five relative to the handling of these ballots after they were counted by the official counters in connection with all the circumstances of this case are, in our view, sufficient to discredit their character as the best evidence. We think, under the circumstances, they may be considered; but it is a question of fact for the jury or the court sitting as a trier of the facts to determine whether they are the identical ballots cast by the voters of this precinct, and to determine whether the greater weight shall be given to the ballots or the evidence of the election judges and the by-standers, who testified as to the result either as ascertained by them from the tally sheets, or as stated by the election inspector at the close of the canvass.

Upon a demurrer to the evidence, the weight of conflicting evidence cannot be weighed, and for this reason we think the trial court committed error in sustaining the demurrer to the evidence, and the judgment of the trial court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

All the Justices concur.