## MOSS v. HUNT.

No. 6057.   Opinion Filed October 13, 1914.

Rehearing Denied January 9, 1915.

(145 Pac. 760.)

1.   **ELECTIONS—Contest—Ballots—Evidence.** In a contest proceeding involving the legality of certain votes cast in precinct 5 in Wagoner county, evidence was introduced showing such disregard of the law and irregularity by the election officials in making and signing the certificate of returns as to warrant the court in permitting the ballots to be introduced in evidence. **Held,** there were sufficient facts and circumstances tending to identify the ballots in question to warrant the court in permitting the same to be introduced in evidence for the purpose of counting.

2.   **SAME—Sufficiency of Evidence.** In a contest proceeding over the office of county judge of Wagoner county, it was contended by plaintiff that at the general election of 1912 the total vote cast at said election in precinct 5 for all candidates for said office was 88; that he received 37 and defendant received 39, and the Socialist candidate 11 votes; that there was one mutilated ballot. Plaintiff's evidence strongly tends to sustain his contention. Defendant contended there were 98 votes cast; that he received 52, plaintiff 36, and the Socialist ten. The ballots were introduced in evidence, and after a recount thereof, in connection with the examination of the ballot stubs, the court found defendant's con-

tention to be true. **Held,** there was sufficient evidence reasonably tending to sustain the finding of the court, and its judgment will not be reversed on appeal.

3.    **SAME—"Mutilated Ballot."**  In precinct 7 in said county, there were 25 votes cast for plaintiff and five for defendant, upon which no names of candidates for the offices of justice of the peace and constable on the Republican ticket were printed.  At the suggestion of one of the election officers, the voters of these ballots wrote the names of one Taylor and one Clark for the offices of justice of the peace and constable, respectively.  The court found that, in pursuance of a common understanding, said votes were cast for a person for each of said offices who was not entitled to run in said election, and with the purpose and intention of so marking and distinguishing their ballots that they would be counted in violation of law for a person who was not entitled to have said ballots so counted. That part of section 3086, Rev. Laws 1910, relative to mutilated ballots, reads:  "Ballots bearing any mark as a distinguishing mark shall not be counted." **Held** that, when the facts and circumstances show that any voter so marks or writes on his ballot with the intention of distinguishing it, the same becomes mutilated, within the purview of said section, and should not be counted. **Held,** further, there are sufficient facts and circumstances reasonably tending to sustain the finding of the court.

(Syllabus by the Court.)

*Error from District Court, Wagoner County;*
*Summers Hardy, Judge.*

*Quo warranto* by W. B. Moss against W. T. Hunt. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 40 Okla. 20, 135 Pac. 282.

*Robert F. Blair* (*Henry M. Brown,* of counsel), for plaintiff in error.

*Thomas H. Owen* and *Joseph C. Stone,* for defendant in error.

RIDDLE, J.  This case presents error from the district court of Wagoner county, wherein judgment was rendered in favor of defendant in error, defendant below, in a *quo warranto* proceeding, involving the offices of county judge and sheriff.  Plaintiff, in substance, alleged in his

petition that he was a candidate for the office of county judge as nominee of the Republican party; defendant was a candidate for said office as nominee of the Democratic party; that E. L. Moore was a candidate as the nominee of the Socialist party; that at the election held November 5, 1912, there were cast for said office of county judge 2,332 votes, of which plaintiff received 928, defendant 917, and Moore 483; that plaintiff was duly and legally elected to said office; that, notwithstanding plaintiff's election to said office, the county election board wrongfully and unlawfully declared defendant to be elected, and issued to him a certificate of election. He alleges that the certificate made and returned by the precinct election board in precinct No. 5 fails to state the truth in regard to the votes cast at said precinct; that Precinct Inspector F. B. Wertz caused the counters to sign the certificate required by law in blank before the votes were counted, and required them to leave the certificates and tally sheets in his possession in this condition; that said Wertz wrongfully, fraudulently, and unlawfully did change and cause to be changed said tally sheets and certificates, and did write into them a false return of the votes cast in said precinct, showing 34 votes for plaintiff, when in truth and in fact he received 37, and by showing 50 votes for defendant, when in truth he received only 39; that said county election board canvassed said returns as thus shown. He prays that he have judgment of the court, declaring him duly elected county judge of said county.

Defendant filed his answer, consisting of a general denial, and alleging that in precinct 7 a large number of ballots were mutilated and were counted in favor of plaintiff, when in truth and fact said ballots were illegal and should not have been counted. To this answer, a reply was filed.

Upon the issues thus made, the case proceeded to trial before the Honorable Summers Hardy, special judge, on

November 22, 1913. A large volume of testimony was introduced, including the ballots from several precincts, among them being precincts Nos. 5 and 7, two of the principal precincts in controversy. By agreement of all parties, the contest over the office of sheriff of said county was, in effect, consolidated with this cause; and the evidence, in so far as applicable, should apply to the issues in that case.

At the conclusion of the evidence, the court made separate findings of fact and of law, finding both issues in favor of defendant. The propositions, as stated by counsel for plaintiff, submitted for our consideration for reversal of this cause, are:

"(1) The evidence establishes beyond controversy that plaintiff received 37 votes and defendant received 39 votes at precinct 5, and the court committed reversible error in refusing to so find and decide. (2) The court committed reversible error in permitting counsel for defendant to introduce in evidence the ballots from precinct 5, without first requiring him to establish by a burden of the proof that said ballots were the same ballots which had been cast and in the same condition when offered in evidence as when cast by the electors and counted by the counters. (3) There is no legal evidence in this record reasonably tending to support the findings of the court that plaintiff received 36 votes and defendant received 52 votes and the Socialist candidate received nine votes, and the court committed reversible error in so finding."

These propositions require the consideration of the evidence. We have carefully read the excerpts of the testimony in the briefs of counsel for both parties and have read the entire record upon the contested points. The first question presented for our consideration is as to whether or not there is any evidence tending to sustain the court's ruling in admitting the ballots in evidence from precinct No. 5; in other words, whether or not said ballots had been sufficiently identified as the ballots cast at said box. While the testimony is anything but satisfactory, yet, from the facts and circumstances before the trial court, we are of the

opinion that there was sufficient evidence to warrant the ruling of the court in holding that the ballots sought to be introduced and counted from precinct 5 were the identical ballots cast for the office of county judge in said precinct. We must presume that the ruling of the court in this respect was correct; and the burden is on the party challenging the correctness of this ruling; and as we say, from the facts and circumstances before the trial court, we are not prepared to say that there was not sufficient evidence before the court to warrant the action of the court. The court, having admitted the ballots in evidence for the purpose of counting them, the question arises: Is the finding of the court upon this contested point reasonably sustained by the evidence?

There were many facts and circumstances, including some physical facts, which indicate to us that the ruling of the court in this regard was against the weight of the evidence. Were we authorized to weigh the evidence, we should be inclined to find this issue in favor of plaintiff. The contest over this precinct was as to whether or not the entire vote cast was 88 or 98. It is admitted that the total vote cast for the office of Corporation Commissioner, including the Democratic, Republican, and Socialist votes in precinct No. 5, was 90; that the total vote cast for the office of United States Senator by the three parties was 90; that the total vote cast for the office of Congressman at Large by the three parties was 90; and there are other circumstances tending to show that 88 or 90 votes were all that were cast in said precinct. This was, in effect, the testimony of Mr. Thompson, the judge of said precinct, and one Lomax, the Socialist watcher. Notwithstanding this testimony, which seems to us to be reliable and somewhat of a conclusive effect, the court had before it the ballots and the stubs from which they had been torn, together with all the witnesses; had an opportunity to observe their de-

Moss v. Hunt.

meanor on the witness stand, their manner of testifying, their interest or lack of interest; and from all the facts and circumstances in evidence the court held that there were 52 votes cast for defendant and only 36 for plaintiff. It must be admitted, under the record in this case, that there is sufficient evidence reasonably tending to sustain the finding of the trial court, and under the settled rule of this court we are not at liberty to disregard the finding of the court. By adding to the number of votes which it is conceded the respective parties received, the vote which the court finds from the evidence the respective parties received in precinct 5 would show defendant to have been elected by one majority.

This case was before this court (*Moss v. Hunt,* 40 Okla. 20, 135 Pac. 282) upon appeal from a judgment of the trial court sustaining a demurrer to plaintiff's evidence. In an opinion by Chief Justice Hayes, the judgment of the trial court was reversed. The court uses the following language:

"The irregularities of the election officers in precinct 5 relative to the handling of these ballots after they were counted by the official counters in connection with all the circumstances of this case, are, in our view, sufficient to discredit their character as the best evidence. We think, under the circumstances, they may be considered; but it is a question of fact for the jury or the court sitting as a trier of the facts to determine whether they are the identical ballots cast by the voters of this precinct, and to determine whether the greater weight shall be given to the ballots or the evidence of the election judges and the bystanders, who testified as to the result either as ascertained by them from the tally sheets, or as stated by the election inspector at the close of the canvass. Upon a demurrer to the evidence, the weight of conflicting evidence cannot be weighed, and for this reason we think the trial court committed error in sustaining the demurrer to the evidence, and the judgment of the trial court is reversed, and the cause remanded for further proceedings in accordance with this opinion."

It seems that the trial court has conformed to the opinion rendered therein, and has weighed the evidence and decided in favor of plaintiff; and to fail to adhere to its judgment would, in effect, overrule many decisions of this court and disregard a settled and sound principle of procedure.

Under the last proposition, it is contended by plaintiff that the 25 ballots cast for plaintiff and the five cast for defendant in precinct 7 were not mutiliated or distinguished by the voters, and the court committed prejudicial error in so holding and in failing to count these ballots. The undisputed facts show that the ballots furnished this precinct had no names printed thereon for the offices of justice of the peace and constable on the Republican ticket; in fact, there was no one nominated in this precinct by the Republican party for either of these offices, and for this reason there were no names of any candidates printed on the ticket for either of these offices. It seems that the question arose, after the polls had been opened in precinct 7, as to what should be done in regard to voting for a candidate for constable and justice of the peace. It appears that one of the election officers advised the voters that they could write in names of the parties to be voted for for these offices. On 25 of the ballots cast for plaintiff and five of the ballots cast for defendant, there were written in the blank spaces the names of Clark and Taylor, for constable and justice of the peace, respectively. The trial court excluded these ballots, and held they were mutiliated and were illegal. The court made the following finding:

"At precinct 7 the total vote as disclosed by a recount shows as follows: Moss 37; Hunt 26; Casaver 29; Long 18. Upon a recount it appeared that of the votes cast a great number had written on the face thereof various words, indicating an intention upon the part of the voters to vote for one Clark and one Taylor as candidates of the Republican party for justice of the peace and constable of that precinct.

The names of Clark and Taylor were spelled in various ways, and one ballot, instead of containing the names of candidates, had written in pencil the words 'justice of the peace' and 'constable.' Upon the face of the recount as above outlined, the defendant Hunt is shown to have been elected to the office of county judge, and the plaintiff Casaver is shown to have been elected to the office of sheriff. If the votes in No. 7, which are called in question, be sustained as legal ballots, then the result will be as just stated. If they be declared illegal, both defendants will be entitled to recover. * * *

"Clark and Taylor had not, nor had either of them, been nominated by the Republican party, nor had their names been placed upon the ballot as nonpartisan candidates, and they were not entitled under the law to run in said election, nor to have the electors cast their votes for them. There is no proof, in fact, that any such persons existed.

"It is apparent from the testimony that the voters casting the marked ballots did so in pursuance of a common understanding between themselves and at the suggestion of one of the election officials that they would vote for a person for each of said offices who had not legally become a candidate and who was not entitled to run in said election for said office, and with the purpose and intention of so marking and distinguishing their ballots that they would be counted in violation of law for a person who was not entitled to have said ballots so counted."

The court then proceeds to construe certain provisions of the Constitution and election laws, and holds that all ballots upon which names of Clark and Taylor are written are illegal, as stated. The court construes the provisions of the Constitution and the laws enacted in pursuance thereof, providing for the nomination of candidates for all offices, to be mandatory; holding that no one is entitled to have his name appear upon the ticket at the general election who was not the regular nominee of his party, or who obtained the right to have his name placed upon the ticket by reason of having been nominated by petition in the manner provided by law; and that, as neither Clark nor Taylor had

been nominated in either manner, there was no authority for either of them to be a candidate, and hence writing their names upon the ballots was unauthorized and illegal.

We are of the opinion that the provisions of the Constitution and the election laws passed in pursuance thereof are mandatory, and that no one can be a candidate and have a right to have his name placed upon the ticket at any general election who has not been nominated either at the primary election or by petition, as provided by law, except under certain contingencies, where the committees of the respective parties are given the power to select a nominee; and no doubt it was intended by the framers of the Constitution that these provisions should be mandatory and strictly followed and enforced. The determination of this question, however, is not controlling in the determination of the point as to whether or not the ballots in precinct 7 were mutilated and thereby distinguished, under the provision of the election law now in force and which was in force and controlling at the time of the general election in 1912. Had section 29, c. 111, p. 226, Sess. Laws 1910, become a law and been in force, the question would be simple and easy to solve; and it would be very clear that the court was correct in excluding the ballots as mutilated. This section provides:

"No mutilated ballots shall be deposited in the ballot box and if any mutilated ballots shall be found therein, they shall not be counted, except for the purpose of ascertaining the total number of votes cast in the precinct. All mutilated ballots shall be returned in the envelope marked 'Mutilated Ballots.' The words 'Mutilated Ballots' as used in this section shall mean any ballot upon which appears any defacement, mutilation or distinguishing mark by which it could be identified."

Under this section, it would be immaterial as to the intention of the voter, but if any mark or word or name written upon the ballot would have the effect to distinguish it,

then it would be a mutilated ballot. In other words, by this section the Legislature has construed the act, and the court is required to follow such construction; but this section never became effective, and the law in force governing the election in question was materially different. That part of section 3086, Rev. Laws 1910, relating to mutilated ballots, provides: "Ballots bearing any mark as a distinguishing mark, shall not be counted."

We are of the opinion that, in view of this language, before a ballot should be held illegal as mutilated, the facts and circumstances should show that it was the intention of the voter to so mark it, in order that it might be distinguished; and it seems that the intent of the voter must govern. It is true that it is the province of the court, or a jury trying the case, to determine the intent of the voter from the facts and circumstances, including his acts, and the character of the mark or other writing or sign made on the ballot. In this case the court finds that the names written upon the ballots were written by the voters with the intention and for the purpose of distinguishing such ballots, so they would be counted in violation of law for a person who was not entitled to have said ballots so counted. We are unable to say that the facts and circumstances were not sufficient to sustain the finding of the court. We are, therefore, of the opinion that, in view of the findings of the court, the ballots in question were mutilated, and they were illegal.

There is no decision of this court construing the statute in force on this point and governing this election, yet there are decisions of similar import, and we cite a few below: *Town of Eufaula v. Gibson*, 22 Okla. 507, 98 Pac. 565; *McClelland v. Erwin*, 16 Okla. 622, 86 Pac. 283; *Bloedel v. Cromwell*, 104 Minn. 487, 116 N. W. 947; *Weeks v. Kip*, 64 N. J. Law, 61, 44 Atl. 856; *Chamberlain v. Wood*, 15 S. D.

216, 88 N. W. 109, 56 L. R. A. 187, 91 Am. St. Rep. 674; *Elwell v. Comstock*, 99 Minn. 261, 109 N. W. 698, 7 L. R. A. (N. S.) 621, 9 Ann. Cas. 270.

In none of the foregoing decisions was the statute under consideration the exact statute which is in force in this state and which governed the election of 1912. It cannot be doubted, however, that the statutes which were involved and construed by the courts in the foregoing cases, as well as the statute under consideration, were all enacted for the purpose of maintaining the secrecy of the ballot, to the end that fraud and corrupt elections might be prevented and the purity of the ballot upheld. Maintaining the secrecy of the ballot is simply one of the means to this end; that is, to prevent election frauds. The general rule is that the voter should be held, on the one hand, to a strict performance of those things which the law requires of him, and, on the other, relieving him from the consequence of a failure on the part of the election officers to perform their duty according to the letter of the statute, where such failure has not prevented a fair election. McCreary, on Elec., section 724; *Rampendahl v. Crump*, 24 Okla. 873, 105 Pac. 201. We do not hold that where election officials inadvertently, or otherwise, fail to print the name of a regular candidate upon the ticket, the writing of the name of such candidate upon the ticket, in good faith by the voter, would, under our statute, constitute a mutilated ballot and render the same illegal. But we hold that there are sufficient facts and circumstances in this case, tending to support the finding of the court; and that the court having held that the ballots cast in precinct 7 and upon which certain names were written as candidates for the offices of justice of the peace and constable were so written by the voters with the intent and purpose on their part to have said votes cast illegally, and counted for persons who were not entitled to be candidates, such holding will not be reversed. While the court does not

·specifically hold that such names were written on the ballots with the intention to write a distinguishing mark thereon, yet we think, from the facts found by the court, the intent may reasonably be inferred from the finding the court made.

For the foregoing reasons, the judgment of the trial court is affirmed.

All the Justices concur.