## LOGAN v. YOUNG.

No. 17096—Opinion Filed July 7, 1926.

Rehearing Denied Oct. 5, 1926.

(Syllabus.)

1. **Elections—Returns as Prima Facie Evidence of Correctness of Vote.**

Under section 6299, C. O. S. 1921, the returns made by the precinct election officials to the county election board constitute prima facie evidence of the correctness of the precinct vote.

2. **Same—Preliminary Proof of Fraud or Error of Officers Warranting Recount of Ballots.**

As between the ballots and the canvass thereof by the election officers, the ballots are the primary and controlling evidence where it is made to appear that they have been preserved in the manner and by the officers prescribed by statute, and that they are the identical ballots cast by the voters, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity for their having been changed or tampered with. However, in an election contest where the plaintiff has charged the election officers of each of the 50 precincts of the county, either through error, mistake, or fraud, with failing to count, for plaintiff, certain ballots which had been legally cast for him, the plaintiff cannot have the ballot boxes opened and the ballots recounted without first offering proof of the alleged fraud or malconduct, aliunde the ballot boxes, to overcome the prima facie presumption of the regularity and correctness of the action of the election officers.

Error from District Court, Stephens County; E. L. Mitchell, Assigned Judge.

Proceeding by R. G. Logan against E. R. Young to cancel an election certificate issued to defendant and to have plaintiff declared elected to the office of sheriff of Stephens County. Judgment for defendant, and plaintiff brings error. Affirmed.

McArthur & Robertson and H. B. Lockett, for plaintiff in error.

Sullivan & Rice, E. H. Bond, H. W. Sitton, Womack, Brown & Cund, and Ben F. Saye, for defendant in error.

MASON, J. The plaintiff in error was plaintiff and the defendant in error was the defendant in the trial court, and, for convenience, they will be so designated herein.

The plaintiff was the Republican candidate for sheriff of Stephens county, and defendant was the Democratic candidate for the same office at the general election held November 4, 1924, wherein a sheriff of said county was elected for a term of four years, commencing January 5, 1925. The returns of said election disclosed that the defendant received a majority of the votes cast for said office and the county election board delivered to the defendant its certificate of election to said office, whereupon the defendant took the oath of office and assumed the duties thereof on January 5, 1925.

Thereafter, on January 9, 1925, the plaintiff, claiming to have been elected to said office, instituted this proceeding in the district court of Stephens county against E. R. Young, as defendant, to set aside said certificate of election and to have it adjudged that the plaintiff had been duly elected to said office.

The petition, in substance, alleges that in each of the 50 precincts of said county the election officials, by error, mistake, or fraud, overcounted and certified for the defendant more votes than he in fact received, and counted and certified for the plaintiff less votes than he in fact received; that certain ballots voted for plaintiff were erroneously declared to be mutilated ballots and not counted for the plaintiff; that certain ballots which were stamped under the Democratic emblem and also in front of plaintiff's name had not been counted for plaintiff, but had been counted for defendant; that if said mistakes were corrected it would be disclosed that the plaintiff had been duly elected to said office.

Upon trial of the case, the plaintiff testified to a state of facts sufficient to show him to be possessed of the necessary legal qualifications to hold said office. He also testified that he had not received a certificate of election to said office. The secretary of the county election board testified that the ballot boxes used in said election were then in his possession and had been ever since said election. Although the defendant on cross-examination of said witness brought out some slight evidence to the contrary, we think the evidence of said witness, at least for the purpose of this appeal, was sufficient to establish the integrity of said ballot boxes. Without any further evidence on behalf of the plaintiff, he moved the court to have each of said ballot boxes

opened and the ballots counted, to which the defendant objected, for the reason that there had been no preliminary proof in support of plaintiff's allegations of error, mistake, or fraud sufficient to overcome the legal presumption in favor of the returns of said election. The court sustained said objection.

The plaintiff then offered to prove, by the secretary of the election board, that the returns of each of the precincts, which were locked in their respective ballot boxes, were not duly and legally signed by the precinct election officials. The court sustained defendant's objection to said offer, for the reason that it was not within the issues as pleaded by the plaintiff. No further testimony was offered, and the defendant interposed a demurrer to the plaintiff's evidence, which was sustained and judgment rendered for the defendant. The plaintiff has duly perfected his appeal to this court and for reversal urges the following:

(1) "The ballots preserved as required by law should have been admitted by the trial court without preliminary evidence tending to establish fraud or mistake in the counting or canvassing of the votes or in the returns."

(2) "The returns of precinct election officers, on which the county election board relies in certifying the county returns, are not even prima facie evidence of the correctness of the precinct vote unless verified as required by section 6151 of the Compiled Laws of 1921, and the court erred in refusing to allow the ballot boxes to be opened and the precinct returns inspected to show that they were not properly sworn to as provided by the statute."

The plaintiff first insists that the ballots themselves are the best evidence of the intentions and choice of the voters and of the number of votes received by any candidate. This is a primary rule in the law of elections and has been adhered to by this court in the following cases: Whitaker v. State ex rel. Pierce, 58 Okla. 672, 160 Pac. 890; Moss v. Hunt, 40 Okla. 20, 135 Pac. 282; Moss v. Hunt, 47 Okla. 1, 145 Pac. 761; Newhouse v. Alexander, 27 Okla. 46, 110 Pac. 1121.

In Whitaker v. State ex rel. Pierce, supra, this court announced the rule as follows:

"As between the ballots and the canvass thereof by the election officers, the ballots are the primary and controlling evidence where it is made to appear that they have been preserved in the manner and by the officers prescribed by statute, and that they are the identical ballots cast by the voters, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity for their having been changed or tampered with."

Plaintiff then insists that he was entitled to impeach the returns by the best evidence, which was the ballots, and that after it was shown that the ballot boxes had been kept intact and the ballots inviolate, they should have been received in evidence without any other evidence. Plaintiff cites the following cases: People v. McClellan, 191 N. Y. 341, 84 N. E. 68; Snowden v. Flannery (Ky.) 167 S. W. 893; Gant v. Brown (Mo.) 142 S. W. 422.

The real question for our consideration is: Must the trial court, on mere suspicion and demand of a candidate and without any prima facie proof tending to impeach the regularity or the integrity of the official count and canvass, order a recount of the ballots?

There appear to be many cases which hold that as between the canvass of the ballots made by the election officials and the ballots themselves, the ballots, if they have been kept inviolate, are the best evidence, but there appear to be very few cases on the real question presented for our determination.

In 9 R. C. L. 1163, the rule is stated as follows:

"There is some question, however, as to the readiness with which the courts should open the ballot boxes. In some states the question is settled by statutes which expressly require the production, opening, and inspection of the ballots on demand in any contest. But in the absence of such provision, and where the contestant's case rests on the charge of misconduct on the part of election officers, it has been held that every consideration of public policy should influence the court to be cautious in the opening of ballot boxes, and hence that it will not on mere suspicion and the demand of a contestant or elector, and without any extrinsic evidence tending to impeach the regularity or integrity of the official count and canvass, order a recount of the ballots, but will require a contestant to show in advance some evidence of fraud or misconduct of such officers, reasonably calculated to overcome the universal prima facie presumption of the regularity and correctness of official action."

In Quigley v. Phelps (Wash.) 132 Pac. 738, the Supreme Court of Washington seems to have had this identical question before it, and in the third and fifth paragraphs of the syllabus announced the following rules:

"While, in an election contest, the ballots were the best evidence of the number of

votes received by any candidate, a party who in his complaint charged every election officer in the county with fraud and malconduct could not have the ballot boxes counted without first offering proof of the fraud and malconduct alleged aliunde the ballot boxes to overcome the prima iacie presumption of the regularity and correctness of the action of the election officers, since in election contests it is the interest of the public to which the courts will look rather than the interest of the individual parties."

"In an election contest, the contestant is not entitled to have the ballot boxes opened and the ballots counted without preliminary proof to sustain his charge of fraud and malconduct on the ground that no evidence other than the ballots is available, since the election officers would be competent witnesses as to the manner of making the count, and any irregularity therein such as would authorize a recount would be disclosed by their testimony."

An examination of the case of Gant v. Brown, supra, cited by plaintiff in error, discloses that it is based upon constitutional and statutory provisions which practically make the ballots themselves the only evidence in a contest case without antecedent evidence of malconduct on the part of the election officials or anything impeaching their return. We have no such constitutional or statutory provisions relative to general elections, and hence, the rule announced in said case is not applicable here. On the contrary, section 6299, C. O. S. 1921, provides that the returns made by the precinct election officials to the county election board constitute prima facie evidence of the correctness of the precinct vote.

"Prima facie evidence" has been defined as follows:

"Prima facie evidence of a fact is such evidence as in the judgment of the law is sufficient to establish the fact; and if not rebutted remains sufficient for that purpose." Meadors v. Johnson, 27 Okla. 544, 112 Pac. 1121; Kelly v. Jackson et al., 6 Pet. 622.

There is also a well established rule of law that public officials are presumed to do their duty. We therefore have not only a legal presumption that each of the election officials of the various precincts did their duty and properly tabulated and counted the votes in their respective precincts, but we have a statutory provision which makes their returns prima facie evidence of the correctness of said vote. Although the ballots are the best evidence, and under certain conditions may, when they have been properly preserved, be recounted under direction of the court, yet we do not think that

it was ever intended that the above presumption should be disregarded and the ballots used as original evidence for the purpose of discovering possible errors. To justify their use as against the returns, there must be such preliminary evidence as the trial court may, in the exercise of its sound discretion, determine sufficient to overcome such presumption. To open the ballot boxes and count the ballots without such proof would be to reject the returns and ignore the certificate of election. It would be tantamount to saying to the defendant that, "Although the returns show you received a majority of the votes cast, and although a certificate of election has been issued to you, and although the returns are prima iacie evidence of the vote cast, and although the law presumes that the election officials have done their duty, yet since the plaintiff has made an allegation that the returns are false, fraudulent, or erroneous, the court, without any evidence whatever, to overcome such prima facie evidence and presumption, is going to disregard the same and require you to come into court and prove by the ballots (the very ballots which have been counted by the officials designated by law to make the count and to whose every act every presumption of regularity attaches) that you are the duly elected sheriff of Stephens county, Okla."

To do this would be to totally disregard the expressed provisions of our statutes and the decisions of this court on this question.

It will not do to say that the presumption as to the correctness of the returns may be overcome by a recount of the ballots, because the moment the court begins to count the ballots the returns have been disregarded, thrown aside, and held for naught. Otherwise there would be no need to count the ballots.

All contention at this stage of the proceedings about the ballots being the best evidence of the votes cast is begging the question until said prima facie evidence and presumptions are overcome and the returns are destroyed. Then, and then only, does an issue arise which requires that the ballot boxes be opened and the ballots counted by the court. Any other rule would practically eliminate the necessity of the ballots being counted by the election officials, as defeated candidates invariably believe that a mistake has been made and would so allege in order that they might go on a "fishing expedition" and perchance by a recount of all the ballots cast discover a mistake in the election returns as made.

The case of People v. McClellan, supra, seems to support the plaintiff's contention, but we do not feel warranted in following the broad rule there laid down. Such rule would, as it seems to us, render the remedy by contest so easy of abuse as to invite a period of turmoil, consuming weeks of the time of our courts after every election, to the exclusion of ordinary litigation, and at great expense.

An election contest is not an ordinary adversary proceeding. The public is concerned and it is the public interest to which the courts will look in such a case rather than the interest of the particular contestants.

In the body of the opinion, in the case of Quigley v. Phelps, supra, the court uses the following language, which we adopt as expressing our views:

"In determining whether the ballot boxes shall be opened and the votes recounted on mere suspicion and on mere demand—which is the effect of the complaint before us—and without any evidence impeaching the conduct of the election officers in making the original count and canvass, the courts should view the matter in all of its bearings as affecting the public interest. If the public interest would suffer from such a course, if the mischiefs resulting therefrom would be great and widespread, as seems to us inevitable, and if it does not appear that such a course is necessary to the reasonable preservation of the purity of the ballot, then the courts are not warranted in adopting that course, in the absence of a statute so directing. It is certainly not asking too much of a person who by a sweeping wholesale charge of deliberate misconduct on the part of every election officer of his county seeks to consume weeks of the time of the court by a recount of all the ballots at the public expense to require him to show in advance some slight evidence of fraud or malconduct of such officers, reasonably calculated to overcome the universal prima facie presumption of the regularity and correctness of official action. That such a presumption exists in this as in other cases of official action is evidenced by the fact that the certificate of election is based upon that action. It will not do to say that the contestant if unsuccessful pays the costs. The taxable costs of such a proceeding are insignificant as compared with the actual expense to the public direct and indirect. While every good citizen must concur in the sentiment that no price is too great to be paid for a pure ballot, we can hardly conceive that it is necessary to the purity of the ballot that the court, upon a mere assertion of an impalpable suspicion, may be used as a drag-net with which to fish for evidence without any antecedent showing of the slightest circumstance tending to impeach the official count. As said by the Supreme Court of Minnesota in O'Gorman v. Richter, 31 Minn. 25, 28, 16 N. W. 416, 417: 'It may admit of doubt whether a court is bound to open the ballot boxes and make a recount unless there be some evidence furnishing ground for supposing that a miscount might have been made by the judges. If a party can demand a count by the court without any such showing, it could often be resorted to as a mere fishing expedition.' It is true, as said by the Missouri court in Gantt v. Brown, supra, chiefly relied upon by the appellant: 'When bona fide charges of fraud are made, it should be the policy of the law to unlock all competent evidence to either prove or disprove the charges.' While heartily subscribing to the wholesome rule so announced, we still think that the charge of fraud or malconduct must be a bona fide charge, and that charge which is founded in such vague suspicion that no evidence can be produced as to the conduct of the election officials, aliunde the ballot boxes, tending to show any measure of irregularity or malconduct, does not seem to possess what can be said in law to constitute the essential element of good faith. It smacks rather of recklessness. No bona fide issue is presented between the official canvass and the ballots themselves until some evidence tending to show official misconduct has been adduced. Nor will it do to say that the purity of the ballot is the basis of our institutions, and to fail to protect the one is to jeopardize the other. That is a truism, but it does not warrant the court in disregarding at the threshold the presumption of rectitude which the law has universally accorded to official action, and in giving no weight to the official count in the absence of anything tending to impeach it. The law has intrusted to the duly appointed election officers the duty of counting the ballots. There is a legal presumption that they have done so honestly and carefully. Their returns are entitled to the presumption of regularity. For the court to recount the ballots without any evidence of wrongdoing on their part would be to disregard this presumption. It would be an assumption of a lack of integrity or competency on the part of everyone of the 1,173 election officers of King county without any antecedent proof of malconduct of any of them. If this is necessary to the preservation of the purity of the ballot in King county, then it is necessary in every other county in the state. The whole judiciary of the state may, and logically should, be called upon to recount the ballots as to every county office in every county on a mere assertion of suspicion by any elector that mistakes may have been made, and weeks of time so consumed without any tangible foundation for a belief that the result would be changed in any instance."

As to the second contention raised by the

plaintiff in error for reversal of the case, we must conclude that the trial court properly refused the offer of the plaintiff on the ground that he had raised no issue in his pleadings as to the returns.

The judgment of the trial court is affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 20 C. J. p. 249 §345; 9 R. C. L. p. 1163 et seq.; 2 R. C. L Supp. p. 934. (2) 20 C. J. p. 255 §352.