OTJEN v. KERR et al.

No. 31227. Dec. 18, 1942.

*136 P. 2d 411*

Herbert K. Hyde and Gomer Smith, both of Oklahoma City, for plaintiff in error.

W. R. Wallace, of Oklahoma City, Tom Anglin, of Holdenville, Catlett & Kerr and Creekmore Wallace, all of Oklahoma City, George Jennings, of Sapulpa, and Kerr, Lambert & Conn, of Ada, for defendant in error.

WELCH, C. J. Plaintiff in error, W. J. Otjen, candidate for Governor, challenged the correctness of the count or announced result which purported to show the election of his opponent, Robert S. Kerr, by 16,111 votes, at the general election of November 3, 1942. His challenge was presented under 26 O. S. 1941 § 392.

The election board, upon hearing thereof, was of the view that the verified statement or petition was not a sufficient statement under the law to entitle Mr. Otjen to any recount or to any further hearing and denied same and dismissed the petition. From that conclusion or decision this appeal is prosecuted.

It is conceded that the law does not authorize a state-wide recount of all ballots cast throughout the state, merely upon request therefor, but plaintiff in error contends his verified challenge or petition was sufficient to entitle him to a further hearing and to the opening of all ballot boxes and re-examination of all ballots cast.

There are 3,690 precincts in the state, each with separate ballot box, and 378,781 votes were cast in the Governor's race. The number of election officials required to conduct the election throughout the state was approximately 25,000 selected from both dominant political parties, of which parties Mr. Kerr and Mr. Otjen were nominees respectively.

It is the public policy as declared by our several election laws to diligently safeguard the sanctity of the secret ballot, which is a treasured heritage of America.

The dominant political parties have representation on the State Election Board, and the boards of the several counties, and each of the precinct boards, which have active charge of all elections. These election officials must subscribe a constitutional oath of office.

26 O. S. 1941 §§ 11-55. Careful and detailed provision is made for the casting and preservation of the ballots and for counting, checking the voted ballots, and making public the results thereof. 26 O. S. 1941 § 361 provides representation of the dominant political parties among the counters. These counters subscribe an oath for faithful performance of duty and are required to call each vote aloud and check with each other and to keep two tally sheets. The returns must be sworn to, posted, and copies filed and preserved. Each political party may appoint a watcher with authority to observe each count in detail. 26 O. S. 1941 §§ 368, 369. Heavy penalties are provided for misconduct. With the election so carefully attended by the law, the result as tabulated and published by those officials is deemed worthy of verity. Election results so officially declared and established are final except where it is made to appear by a verified statement, setting forth a state of facts which, if true, would change the result or a state of facts showing fraud which would bring about the same result.

Thus since statehood the people have made specific provision, by the Constitution, by initiated measures, and legislative acts, covering all matters of elections, the counting of ballots, and as to contests.

The dignity and finality of the election returns is founded upon the prerogative and will of the people speaking by secret ballot in the exact manner which they have prescribed through the Legislature. Those returns cannot lightly be set aside or overthrown. That can be done only as the legislation on the subject has provided.

While the law does not contemplate that the huge task of recounting all ballots over the state shall be undertaken on mere requests, the law does provide for protection from fraud or errors in balloting or counting. And upon proper showing any box or any county may be fully checked or reexamined, to the end that the will of the people may be ascertained and fully enforced.

The act above cited, under which this challenge is presented, provides therefor, sets out the essential requirements, and provides the procedure. The challenge by a candidate must set forth a state of facts which, if true, would change the result in his favor, or a state of facts showing fraud which would affect the result and change the same in his favor.

Thereupon the State Election Board (in the case of contest for state office) after the prescribed notice, hears the matter. The contestant offers evidence as to the facts alleged, and his adversary may offer evidence to controvert the facts alleged. That board then determines the matters in issue, with power to make a reference to any county election board for recounting there of ballots or for there conducting a hearing and there making a finding on controverted facts.

It is obvious, however, that this machinery may not be set in motion at all until a contestant has set up facts on which his evidence may be heard, and to which his adversary may offer controverting proof. And it is indicated as a requirement that the facts relied upon be so specified as to counties that the state board may determine whether to make the county reference authorized and to which county the reference should be made. It is the fixed plan that the whole program of balloting by the citizens and counting by sworn officers should be, and is, protected by the theory and provision that the certified result in the numerous precincts and in all the counties be not set aside or reopened unless facts of material substance are alleged.

The question, then, for our consideration is whether the State Election Board correctly concluded that there was here no such sufficient statement of facts.

The challenge or petition here alleged, in substance, that the returns of each precinct were incorrect and erroneous;

that many votes in each precinct were counted for Mr. Kerr though cast for other candidates; that mistakes, errors, and omissions in each precinct resulted in erroneous counting in favor of Mr. Kerr; that in the returns erroneous credit for votes was given Mr. Kerr in each precinct; that by errors less than the correct credit for votes was given the contestant in each precinct on the returns; that in each precinct many persons not qualified electors were permitted to vote; that in each precinct many illegal ballots were counted; that in each county the announced result was incorrect and did not show the actual number of votes legally cast and legally entitled to be counted; that the ballots now in each of the ballot boxes are not the ballots which were placed therein by the qualified voters of the precinct; that the tally sheets and returns now on file with the State Election Board are incorrect as to each precinct; that there is a discrepancy between votes actually cast in each precinct and those shown on the tally sheets and returns; that in each and every precinct there was a fraudulent plan to count as multilated ballots, to count for his opponent, all ballots voted in a certain way for contestant and that this plan was carried out in every precinct; that the foregoing does not list all the errors, mistakes, wrongful acts, and frauds in each precinct; that a recount in each precinct and an investigation into the conduct of the election in each precinct will show contestant was elected.

Thus it is apparent that contestant seeks a re-opening of the 3,690 ballot boxes and a state-wide recount on the foregoing allegations. When analyzed, those statements are these: (1) That all returns and tally sheets and announced results are erroneous. (2) That all counting was incorrect. (3) That persons voted who were not qualified, and illegal ballots were counted. (4) That in each of the 3,690 precincts the officials conspired to the end that ballots cast in a certain way for contestant should be and were treated as mutilated ballots, or counted for his opponent;

and (5) that the ballots now in the various ballot boxes are not the ballots voted and placed therein by the qualified voters of the various precincts.

We think these five classifications fairly include all the matter alleged by contestant. As to the statements or allegations that all returns, tally sheets, and announced results are erroneous, that all counting was incorrect, that persons voted who were not qualified and that illegal ballots were counted, surely we have nothing but conclusions without the statement of any facts to be established at the hearing by contestant or to be controverted by his adversary. It is true, most of those assertions could be checked by a complete state-wide recount. However, that would also be true of a single general assertion or claim that contestant had actually received more votes throughout the state than his opponent. And such a single general statement would be no more a mere conclusion than are the statements or classifications of statements listed above.

A statement of a fact or of facts ordinarily comports with usual or reasonable means of observation or knowledge. When a statement is so broad or so extravagantly made as to preclude any reasonable probability of foundation of observation or knowledge, and is made without any stated foundation or information source, then such statement may characterize itself as a mere conclusion as distinguished from an averment of a state of facts.

So it is with the allegation purporting to charge a fraudulent plan of counting to have been practiced throughout the state in each and all of the 3,690 precincts.

We are satisfied that general reckless assertions as to so-called state-wide circumstances or acts, though appearing on their face to be statements of fact, may demonstrate on their face that they are so overdrawn, and so improbable, and so all-embracing, and so utterly beyond ordinary knowledge, as to wholly destroy their character as specific allegations of fact.

The statute contemplates facts which may be asserted on one side and denied on the other side, and upon which each side may seek evidence so that each may present witnesses to support or deny a statement of such facts.

It is within common knowledge that a statement, though appearing by the words used to be a statement of facts, may be so all-embracing and so utterly beyond ordinary knowledge and so improbable as an entirety and so lacking as to information source or foundation as to characterize it in truth as a general reckless assertion as distinguished from a statement of facts, reasonably to be asserted on one side and denied on the other in a hearing before a legally constituted board.

To say that a certain specific thing or error or wrong occurred in each and every one of the precincts in the state is a mere extravagant assertion, unless supported by some statement as to source of information sufficient to indicate that it really and in good faith is said as a fact susceptible of specific proof in each and all of the individual cases, and sufficient to indicate a good faith desire to present all such proof available.

The plaintiff in error says in his brief at pages 42 and 43:

"And while our petition is all-inclusive and alleges that these mistakes, errors, oversights, frauds, etc., occurred in each and every precinct in the state, yet we do not anticipate that we will be able to offer proof as to each and every one of such precincts in every county of the state, but we do say that we should have the right, under our petition, to attempt to make such proof as to each and every precinct and in each and every county where the evidence may show such conditions to exist, and thereafter to have an order opening every box in every precinct and county as to which our evidence does meet the requirements of the cases above cited."

And at pages 43 and 44 of the same brief he says:

"But counsel wholly fails to comprehend the import of the allegations made in paragraph 9. This paragraph does not say that since the county election boards received the ballot boxes they have not been preserved or that they have been exposed to tampering. But it says that there are ballots in those boxes—not likely in all of them, but undoubtedly in some of them—which are not the identical ballots which were cast by qualified electors voting in such precinct."

Thus it is made plain by his own admission, as well as being apparent from the challenge itself, that it was not intended to state under oath that in all the precincts there was illegality or error. But as to some of the asserted illegality, it is urged that it occurred "undoubtedly in some of them." Yet no fact is stated justifying the conclusion that it is undoubtedly so, and how many of the precincts is "some?"

When the challenge in the words used attacks all of the 3,690 precincts, but obviously and admittedly intends to involve in the hearing only some of the precincts, then indeed the challenge does not advise the adversary what is to be presented, but, on the contrary, effectively conceals from him the particular things he must prepare to refute.

We agree with plaintiff in error that the statutes should have a liberal and reasonable interpretation. We think 26 O. S. 1941 § 392, supra, is designed to relieve from mistakes and fraud which are known with such reasonable certainty as to justify an assertion thereof as a "fact," as distinguished from a vehicle to be employed in search of mistakes or fraud.

We think also that whenever it provides for a statement of "facts" and notice to the opposing party and a hearing on the facts, it is sound to say that it contemplates such a statement of facts as will reasonably inform the opposition of the issues in sufficient detail that he may have a practical and real opportunity to know how to meet the charge with his proof. That principle is so completely a part of our American way as to be almost a matter of common knowledge.

Plaintiff in error in his brief at page 44 says:

"Let us illustrate: Suppose on this hearing we produce evidence that in precinct No. 1 of Oklahoma county there were approximately 100 ballots which had been stamped under the Democratic party emblem by the voter and the voter had then crossed over and also stamped on those same ballots opposite the name of William J. Otjen for Governor, and that all such ballots so marked were counted as mutilated; suppose, further, that we show that the ballot box of said Precinct No. 1 has been preserved in the statutory manner and not exposed to tampering; and that thereupon the box is ordered opened for a recount of the ballots therein."

Now let us "suppose" that we should follow plaintiff in error's request herein and direct the State Election Board to hear evidence under his petition. Would we or Mr. Kerr suppose, or would any responsible person be prepared to expect, that Mr. Otjen would present evidence to the above effect as relates to precinct No. 1 in Oklahoma county? He readily admits in argument as above shown that such condition is "not likely in all of them, but undoubtedly in some of them." Which of the precincts does he mean? The opposition is not advised. If Mr. Otjen was possessed of some knowledge to that effect as relates to that district, a fair compliance with the law would suggest that he so inform his opponent so that he might have a reasonable opportunity to meet the issue with his proof.

Would it seem reasonable that Mr. Kerr should be expected, upon hearing, to produce witnesses from every precinct in the state to meet plaintiff in error's proof as relates to some one or more of the many general charges based only upon conclusions and which admittedly are not intended to apply equally to all the precincts in the state?

Our conclusion here is supported by the decision in Looney v. County Election Board of Hughes County, 145 Okla. 23, 291 P. 565. Therein it was said:

"Section 6, supra, provides that a candidate in a general primary election may challenge the correctness of the announced and posted results thereof and thereby procure an inspection and a count of the ballots by the county election board, if a recount is prayed for, by filing with the proper county election board a verified petition. That verified petition must set forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of. There is nothing in the section that authorizes the inclusion in the verified petition of conclusions either of fact or law. The petition must state facts in detail, and the facts stated therein, if true, must show that the petitioner received a majority of all votes cast for said nomination or show that no candidate had received such a majority and that the petitioner had received either the highest or the next highest vote cast for said nomination.

"A discussion of the allegations necessary to make such a petition sufficient is contained in 20 C. J. 227-229 and in 9 R. C. L. 1167, 1168. Those texts and the cases cited in support thereof announce the rule that the petition must contain a statement of facts and that its sufficiency must be determined from the facts therein stated rather than from the conclusions therein stated. The Supreme Court of Montana, in the case of Gillespie v. Dion, 18 Mont. 183, 44 P. 954, 959, 33 L. R. A. 703, said: 'He should have particularized the facts upon which he draws his conclusion, to the end that the court may see that, if his specifications of grounds are true, he should be granted relief.'

"The Supreme Court of Oregon, in the case of Whitney v. Blackburn, 17 Or. 564, 21 P. 874, 876, 11 Am. St. Rep. 857, said: 'It is the fact or combination of facts which give rise to his right of contest or of action, as the case may be.'

"In that case there was quoted from Election Cases, 65 Pa. 36, a statement, as follows: 'The rule must not be held so strictly as to afford protection to fraud by which the will of the people will be set at naught, nor so loosely as to permit the acts of sworn officers, chosen by the people, to be inquired into without adequate and well-defined cause.'

"A syllabus of the Oregon court is as follows: 'While it is the duty of

courts to disregard mere technical rules or defects, and to liberally construe the statute of contested elections, that the rights of the people may be preserved, and that no protection may be afforded to fraud, yet he who undertakes to contest the right of another to an office to which such other has been declared elected by a tribunal authorized by the people ought to have some well-defined "cause," and to be able to state it with sufficient certainty as to notify and inform the other party of the substance of the facts upon which he relies to defeat his title and to authorize the court to make the inquiry.'

"The texts cited and many of the decisions in support thereof follow a statement made in McCrary on Elections as follows: 'An application for a recount of the ballots cast at an election will not be granted unless some specific mistake or fraud be pointed out, in the particular box to be examined. Such recount will not be ordered upon a general allegation of errors in the count of all, and giving particulars as to none, of the boxes.'

"The other cases cited are to the same effect. We think the rule stated is applicable in this jurisdiction and that the legislative act under consideration should be given that construction."

In Tazwell v. Davis (1913) 64 Or. 325, 130 P. 400, the Oregon Supreme Court discussed a contest petition containing the same allegations. The court said:

"The petition contains three counts. After the formal allegations as to the election, the candidacy of the parties, and the qualifications of contestant for the office, stating that he is a qualified elector of the district, the petition alleges, in substance, that the board of canvassers of election returned that contestee, George N. Davis, received 10,793 votes for the office, and that contestant, George Tazwell, received 10,665 votes; that the respective clerks and judges of precincts numbered 1 to 182, inclusive, including precincts with half numbers, making a total of 191, made a false and erroneous count of the votes cast in such precincts, as the contestant is informed and believes, and therefore alleges that a large number of votes, to wit, 250 or more, were

counted for contestee, George N. Davis, more than were voted for him by the electors of such precincts, that the judges and clerks of election failed to count a large number of votes, to wit, 250 or more, that were cast by the electors in favor of contestant, George Tazwell; that contestant is informed and believes that in truth 10,543 votes were cast for George N. Davis, and no more, and 10,915 or more votes for contestant, George Tazwell. It is not pointed out in which of the 191 precincts the contestant believes that the errors occurred. The petition was properly verified by the contestant to the effect that he believed it to be true; therefore the statement of contestant purports that he is informed and believes that an error occurred in the count. It is not claimed in the petition that any intentional error was made; nor is it shown what judges or what clerks made the error. While it is said that the count was fraudulent, no facts constituting a fraud are set forth.

"McCrary, in his work on Elections (4th Ed.) sec. 435, says: 'An application for a recount of the ballots cast at an election will not be granted, unless some specific mistake or fraud be pointed out, in the particular box to be examined. Such recount will not be ordered upon a general allegation of errors in the count of all, and giving particulars as to none, of the boxes. These rulings were made in case of applications to the court to order a recount of ballots. . . But before ordering it the court held that there must be charges of mistake or fraud sufficiently precise to induce the court to entertain the complaint, and that a general allegation of errors believed to exist was not enough to authorize the perilous experiment of testing the election return by the result of a recount.'

"The first cause of contest is nothing more than an application for a recount. A careful examination of the same does not disclose that errors favorable to the contestant are any more likely to be found than errors in favor of the contestee. It is a mere application for a second chance on a recount of the votes in 191 precincts.

"In counting the votes and making return thereof by the various judges and clerks of election, it is presumed

that every official duty has been performed. In order for a recount or re-examination of their proceedings in the matter, issuable facts should be set forth in the petition indicating some specific mistake or fraudulent conduct, in order that the court may determine whether or not the same is sufficient. We think that the rule referred to in McCrary on Elections is a salutary one, and that it has usually been taken as a guide in cases of this nature. The first cause of contest states no traversable fact as to the grounds of contest, but states conclusions.

"In the case of Whitney v. Blackburn, 17 Or. 564, 21 P. 874, 11 Am. St. Rep. 857, this court, in discussing the allegations contained in the 14 counts of the complaint, at pages 575, 576, of 17 Or., at pages 877, 878, of 21 Pac. (11 Am. St. Rep. 857), of the opinion said: 'From the facts as set forth, it is manifest that they are not even reasonably or otherwise specific and certain, and that no one could be prepared to meet charges preferred in such a general way, or, if any irregularity or illegality in fact did lie concealed behind them, to avoid being taken by surprise. The wording of the notice indicates, as was asserted at the argument, that the plaintiff did not know of a single error or illegal vote cast, but stated the facts broadly and generally, because he was unable to point out or be reasonably specific and certain as to any count in his notice, or as to any irregularity or illegality of whatever kind, upon which to rely, or other facts to sustain his claim. . . . While it is the duty of courts to disregard mere technical rules or defects, and to liberally construe the law that the rights of the people may be preserved, and that no protection may be afforded to fraud, yet he who undertakes to contest the right of another to an office to which he has been declared to be elected, by a tribunal chosen by the people, ought to have some well-defined 'cause,' and to be able to state it with sufficient certainty as to notify or inform the other party of the substance of the facts upon which he relies to defeat his title, and to authorize the court to make the inquiry.'

"The Supreme Court of Indiana, in the case of Borders v. Williams, 155 Ind. 36, 57 N. E. 527, in regard to the allegations contained in the appellant's petition, at page 39 of 155 Ind., at page 528 of 57 N. E. said: 'It is but tantamount to a general averment that the judgment of the county court of canvassers, pronounced upon the returns from the precincts, that the contestee had received the highest number of votes, was erroneous, which would be a mere conclusion, and present no question of fact; and, when pleaded, as in this case, as an independent ground of contest, we must regard it as insufficient and surplusage.'"

In Cruse v. Richards, 95 Colo. 485, 37 P. 2d 382, the Supreme Court of Colorado considered averments which were in some respects more specific than those here presented, but the allegations were in fact too general as was therein pointed out.

In Allen v. Cryer, 77 Cal. App. 605, 247 P. 252, it was said in conclusion:

". . . To the contest of such an election we may well apply the rule stated by this court in Thornbar v. Hart, 29 Cal. App. 284, 155 P. 99:

" 'While section 1117 of the Code of Civil Procedure provides that no statement of the grounds of contest will be rejected for want of form, if the grounds (of contest) are alleged with such certainty as will advise the defendant of the particular proceedings or cause for which such election is contested, it does seem clear that the contestee in such cases is entitled to have stated the particulars in which it is charged that malconduct was committed on the part of the officers conducting the election.'

"The statement of contest in this case does not come up to the standard of the rule above stated. Without the slightest emphasis on any part of the conduct of the boards or officers of election, the statement distributes its accusation evenly across the whole field of more than a thousand precincts. It is not anything other than a general charge that the election count was irregular and erroneous. As well might the contestant say, without extended phraseology: 'The entire count by the boards of election was wrong: Mr. Cryer was not elected: I demand a recount by the superior court.' The statute never was intended to authorize any such obstruction of public business.

"For the foregoing reasons, we think that the appeal is without merit.

"The judgment is affirmed."

In Smith v. Harris, 18 Colo. 274, 32 P. 616, it was held in paragraphs 3 and 4 of the syllabus:

"In an election contest instituted in the Supreme Court, a petition which alleges that the election judges in each and every precinct rejected a large number of legal votes given for contestant, for the reason that the cross was not placed in the proper position, is too indefinite.

"General averments of election frauds, and of the intimidation of voters, are insufficient, as the same particularity is required in stating causes of contest in the Supreme Court, under rule 39, as in cases of contest under the statute."

In Gillespie v. Dion, 18 Mont. 183, 44 P. 954, it is said on Pacific page 959:

"The mere belief of contestant that, if the votes were recounted, it would result in showing a majority for him, does not supply the radical omissions in the statement of contest. He should have particularized the facts upon which he draws his conclusion, to the end that the court may see that, if his specifications of grounds are true, he should be granted relief."

The plaintiff in error points out that in the Looney Case this court was considering a different statute, which stated the requirements of a challenge in more specific terms as to details. We have observed the difference in statutory provisions, but we are satisfied that the reasoning above quoted from the Looney Case is wholly applicable in considering our present statute.

In Gray v. Huntley, 77 Colo. 74, 238 P. 53, at page 56 it is said:

"To order the opening of ballot boxes in every election contest, and to order a recount of the ballots in every case merely because it is asked, without a proper basis therefor, would invite a contest after every election, no matter how honestly and efficiently conducted. It would discredit, without cause, the certificates of sworn election officials, and make a farce of their labors. There must be a ground work or basis for the contest in its incipiency.

"The election contest statutes are not to be regarded as mere fishing licenses for contestors to ascertain the correctness or incorrectness of their statements of contests, nor only as rod and tackle for venturesome sportsmen to hold in their hands and whip an unpromising stream of adverse ballots, in the hope of landing a mess of frauds and errors for their waiting skillets."

The plaintiff in error points out that these cited decisions, in most cases, involved actions different in form from the one here considered. That is true, but the reasoning as to what constitutes an allegation or statement of facts is wholly in point.

In 49 C. J. 93 this general rule is stated:

"The allegations must be made with such circumstantial accuracy as to apprise the opposite party of what is intended to be proved at the trial."

It is true the cited text there has reference to pleadings and to trial. We do not infer that all rules of court pleadings need be applied to this proceeding before the election board. But after all, the challenge is required to allege facts on which the evidence of both parties is presented at the hearing, and the above-quoted rule is applicable.

Again, in 49 C. J., 95, this general rule is stated:

"The rules governing certainty, definiteness, and particularity in pleading have frequently been applied to pleadings in which fraud is a basis for affirmative relief; in such cases the facts constituting the claimed fraud must be clearly and explicitly set out with sufficient particularity to apprise the other party of what he is to be called upon to answer, and that it may be determined whether the charge is well founded."

Insofar as the challenge of plaintiff in error attempted to show fraud, this rule is applicable and demonstrates the insufficiency of the challenge in that regard.

And again, on page 149 of the same text, it is said:

"It is not sufficient to allege fraud or its elements on information and belief unless the grounds on which such belief is based are set forth, or the facts upon which the belief is founded are stated. It has also been considered necessary that the source of plaintiff's information, on which he bases his belief as to matters claimed to constitute fraud or mutual mistakes, should be set forth."

This comprehensive rule statement is made in 18 Amer. Jur. 371-2:

"The notice of complaint in an election contest should state in logical form the facts constituting the grounds of contest. Although certainty is required, the averments need not be technically precise. The pleading should briefly state facts, or a combination of facts, which are sufficient to apprise the contestee of the cause for which his election is contested, it being insufficient to allege generally that fraud was committed or to allege mere conclusions of the pleader. . . ."

The following rule statements in American Jurisprudence are helpful:

"Pleadings are designed to develop and present the precise points in dispute between parties. Their office is to inform the court of the facts in issue, that it may declare the law, and the parties, that they may know what to meet by their proof. In a more restricted and in the commonly accepted sense, the object of pleadings is to notify the opposite party of the facts which the pleader expects to prove, so that he may not be misled in the preparation of his case. And so it is that the allegation of such facts must be made with that certainty which will enable the adverse party to prepare his evidence to meet the alleged facts." 41 Amer. Jur. 289.

"It is not enough to refer to matters in an uncertain, doubtful, and ambiguous manner, as a kind of general dragnet to meet whatever evidence may be presented. This regard for fair notice to an adversary as to the scope of proof under the issues is, in its last analysis, the vital test as to the proper pleading of defenses and the determining factor as to whether they may be comprehended under the general issue or should be specifically set forth. Not only is certainty required to enable the party who is to answer the allegations of a pleading to produce proof to meet that introduced by his adversary in support of his case, but also to enable the jury and the court to understand the issues of the case." 41 Amer. Jur. 310.

A declaration should set out the facts which constitute the cause of action with that degree of certainty of which the nature of the matter pleaded reasonably admits, in order that they may be understood by the party who is to answer them, and by the tribunal that is to hear the matter, and it is not enough to refer to matters in an uncertain, doubtful, and ambiguous manner as a kind of general dragnet to meet whatever evidence may be presented.

The above rule is the substance of the holding of the Supreme Court of Maine in Eastabrook v. Webber Motor Co., 137 Me. 20, 15 A. 2d 25, 129 A. L. R. 1268.

Justice Story, in the case of Minor v. The Mechanics' Bank of Alexandria (U. S.) 7 L. Ed. 46, held:

"The law requires every issue to be founded upon some certain point, that the parties may come prepared with their evidence, and not be taken by surprise, and the jury may not be misled by the introduction of various matters."

From the decisions and texts cited, certain rules are apparent. The contestant must have some knowledge or means of information as to facts that would change the election result or as to facts that show fraud; and he must allege or state such facts with sufficient certainty to show what facts he will seek to prove at the hearing, thus warning his opponent as to what alleged facts he should there prepare to meet by counter proof. General statements and all-embracing statements which demonstrate lack of factual foundation and in themselves exclude probability of information or knowledge thereof in entirety may fall far short of the simple requirements, no matter in how forceful or extravagant language the statement is written.

When fully examined, the challenge here considered does not contain any allegations of facts to be tried at a hearing, and the State Election Board correctly so held.

Affirmed.

CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, HURST, and DAVISON, JJ., concur. ARNOLD, J., dissents. RILEY, absent.

---

ARNOLD, J. (dissenting). Our election contest laws contemplate a practical and adequate plan of procedure to test the verity of the returns of any county, district, or state election. As to county offices the provisions are plain, simple, and direct. As to district and state offices the plan appears somewhat more complicated, but when considered carefully, keeping in mind the evident intention of the Legislature to provide a contest and recount therein when a proper case is presented, the conclusion is inescapable that the people, speaking through legislative enactment, intended to provide for a recount in district and state races.

Realizing the purpose of the Legislature to provide an adequate and practical plan of recount in such races, and cognizant of the impelling public and private reasons supporting the determination of the Legislature to make provision therefor, I cannot agree with the result obtained by the majority and I am compelled to respectfully dissent.

The majority opinion holds:

"The facts relied upon must be stated with sufficient certainty to advise the election board as to the fact contentions upon which contestant desires to be heard, and sufficient to advise the adversary party as to the particular facts upon which he is required to respond upon the hearing."

The result of the majority opinion is based on the foregoing stated principle. I agree with this principle. However, the application thereof in this case by the majority, in testing the sufficiency of the petition to state a cause of action, is so strict as to practically prevent district and state election contests or recounts. There was no right to a recount of elections at common law; such right in this state is purely statutory, remedial and exclusive. In construing statutes regarding election contests and recounts, the general rule is that such statutes should be construed strictly and the acts of the contestant closely viewed with reference to compliance with provisions thereof for inaugurating the contest and which are necessary to jurisdiction. See 26 C.J.S. page 357, § 247.

There is no question herein but that an affidavit challenging the results of the election was filed and a notice, as required by the statute, was served in the manner prescribed; that the jurisdiction of the State Election Board was, under the foregoing rule, invoked there can be no doubt. The effect of the majority opinion is to confuse the question of jurisdiction with the sufficiency of the challenge to state a cause of action and withstand demurrer or motion to dismiss. This should not be done, for the rule of liberal construction applies to statutes relative to election contests in all matters, including sufficiency of petition to state a cause of action, except the requirements as to jurisdiction. I concede that the State Election Board is a quasi-judicial body and therefore had the power to pass upon the sufficiency of the challenge. Albright v. Election Board of Payne County, 172 Okla. 162, 44 P. 2d 995. This it should have done under a liberal construction or view of the allegations in order that justice might have been done in behalf of the people and the obvious intention of the Legislature maintained.

Our statute specifically provides:

"The right to a certificate of election shall not be considered a property right to any extent whatsoever, unless and until such right to such certificate shall be determined and such certificate issued as hereinafter provided." (26 O. S. 1941 § 392.)

By this provision the Legislature, speaking the will of the sovereign people, unmistakably indicated that the

will and intention of the people and the Legislature should be paramount to the interest of any individual candidate. That the people and the Legislature intended that there should be a recount upon a sufficient showing af fraud, collusion, or mistakes that would change the election, there can be no doubt.

A reasonable interpretation of our election statutes must be given in order that the purpose for which they were enacted should not be destroyed and the intention of the Legislature expressed on behalf of the people that elections be kept free from fraud, corruption, mistakes, and inaccuracies should not be defeated, and in order that the contestant's rights might be protected. Technicalities and rules of construction should not be permitted to destroy the public purpose, the intention of the Legislature, or the rights of individual candidates. Herein lies the fundamental reason for the rule that liberal construction should be indulged and applied to election contest statutes. That elections be conducted honestly and efficiently is of grave concern to the people of this state, and technical rules should not be permitted to thwart the will of the people to determine whether or not in any case the result of any election was controlled by fraud, etc. Individual interests, likes and dislikes, are inferior to the public good. The public welfare, as well as the individual interest, can and should be protected under the law, but the public interest should not be destroyed by making it subservient to the likes or dislikes of individuals. The only way that both interests and the integrity of our balloting system can be protected and preserved is by a recount in a proper case. To hold otherwise, the will of the people might be ignored and the sanctity of the ballot destroyed and the confidence of the people in their system of elections greatly shaken. What is a proper case?

Section 392, supra, provides:

"Any candidate for county office may, at any time within ten days from the date of the general election, file with the secretary of the county election board his or her challenge of the correctness of the announced results of said general election by filing with the secretary of the county election board, whose duty it is to canvass the returns in such race, a verified statement setting forth a state of facts, which, if true, would change the result in his or her favor; or setting forth a state of facts showing that fraud had been committed in connection with such election, or both, which, if sustained, would affect the result of the election, and change the same in favor of the contestant."

The foregoing expressed right of contest is by implication accorded candidates for district and state offices with specific provision as to place of filing and notice, etc. So the requirements of the petition or challenge filed in a district or state race is the same as in the case of a county office set forth in the quotation, supra.

Neither this provision, nor any provision similar to it, has ever been before this court for construction as to the sufficiency of a challenge or petition thereunder, though it is contended by the contestee that the statute with reference to primary elections, passed by the Legislature in 1929, under which arose the Looney Cases (Looney v. Election Board of Seminole County, 145 Okla. 25, 291 P. 554; Looney v. Election Board of Hughes County, 145 Okla. 23, 291 P. 565), is similar thereto and the court's construction thereof is in point here.

At this point an historical review of pertinent provisions of our election contest laws and reference to our adjudicated cases thereunder is appropriate. Our first act, which remained in force until 1927, applied only to primary elections. It provided:

"Any candidate in a primary election may challenge the correctness of the announced result thereof by filing with the county election board, whose duty it is to canvass returns in such race, a verified statement setting forth a state of facts which, if true, would change the result in his favor; and thereupon it shall be the duty of such board to

640

inspect and count the ballots questioned by such candidate within ten days after he has filed his affidavit. Such board shall, upon the conclusion of such recount, proceed to certify the result." (Sec. 6107, C. O. S. 1921.)

Note, the foregoing section provides that "a state of facts" should be set forth which, if true, would change the result in favor of the contestant. If this were done, it is provided, *"It shall be the duty of such board to inspect and count the ballots questioned."* We so held in Brown v. Branson, 139 Okla. 271, 270 P. 63, wherein we said:

"It will be observed that section 6107, C. O. S. 1921, provides that, in case of one of the parties to a primary election shall desire a recount of the ballots, he shall file with the county election board a verified statement setting forth a state of facts which, if true, would change the result in his favor, *and that on the filing of such verified statement it became the duty of such board to inspect and count the ballots questioned by such candidate* within ten days after he had filed his affidavit, and that upon a conclusion of such recount said board should proceed to certify the results."

Until its repeal we had no occasion to construe and apply the foregoing statue with reference to the sufficiency of a challenge thereunder. By the plain wording of the foregoing statute it is obvious that if a petition or challenge thereunder were sufficient, no testimony would be necessary to support the allegations therein made and a recount would be necessary on the allegations of the challenge standing alone.

While this act was in force concerning primary elections the case of Logan v. Young, 121 Okla. 203, 249 P. 369, arose. This case involved a general election. It was an action in the nature of "quo warranto." The petition in that case alleged generally that in each of the 50 precincts in said county the election officers, by error, mistake or fraud, overcounted and certified for the defendant more votes than he in fact received; that said ballots voted for the plaintiff were erroneously declared to be mutilated ballots and not

counted for the plaintiff; that said ballots stamped under the Democratic emblem and also in front of plaintiff's name had not been counted for the plaintiff, but had been counted for the defendant; that if such mistake were corrected, it would be disclosed that plaintiff had been duly elected to said office. The sufficiency of the petition was not questioned. However, the court held that before a recount could be ordered under such petition plaintiff would first be obliged to offer proof of the alleged fraud or malconduct to overcome the prima facie presumption of the regularity and correctness of the action of the election officials. The trial court heard the testimony offered in support of the petition and request for recount. The testimony of the plaintiff went entirely to the qualifications of the plaintiff and the fact that the ballots had been properly preserved. The motion of the plaintiff for an order of recount based upon his testimony was denied by the trial court. There was no evidence in support of plaintiff's allegations of error, mistake, or fraud. In such a situation the legal presumption of correctness of the returns would maintain. The trial court, and this court on appeal, so held. The lower court in that instance either thought the allegations of the petition were sufficient or the sufficiency thereof was never called to its attention and it never passed thereon. That case is authority for only one proposition, and that is, that the presumption of regularity and correctness of election returns prevails until overcome by proof in a "quo warranto" action. In the instant case we are concerned with the sufficiency of the petition to entitle one under our statute to offer proof and the case supra is not in point here.

In 1927 a new and different procedure for the contest of elections was provided (chap. 63, S. L. 1927). This act provides for contest both in primary and general elections. (Attention is directed to the fact that there is very little difference in the wording of that act and the one now in force.) The only time that the 1927 act was before this

court was in Brown v. Branson, supra. In that case no question as to the sufficiency of the challenge was raised. It was alleged, among other things, various acts of fraud against the county election officers of Creek county which, if true, were responsible for the defeat of the contestant. Contestant failed to introduce any evidence in support of his allegations as to fraud, etc. The court therein applied the rule announced in Long v. Young, supra, and held:

"Under chapter 63, Session Laws 1927, a contestant of a primary election is not entitled to a recount of the ballots cast upon the mere filing of a verified statement which, if true, would change the result in his favor; but under section 9 of said act he must offer such legal evidence in support of the charge as will overcome the prima facie presumption of the correctness of the returns, as provided in chapter 100, Session Laws 1927.

"In order to overcome such presumption, the evidence on behalf of the contestant must indicate at least a probability that the recount would decide the contest in his favor. In any event, such evidence must be introduced as will reasonably overcome the prima facie presumption of the correctness and fairness of the official returns."

In 1929 the Legislature again changed the procedure as to contests of primary elections. Section 6, ch. 241, Session Laws 1929, provides, in part, as follows:

"Any candidate in a general primary election may challenge the correctness of the announced and posted results thereof by filing with the county election board, whose duty it is to canvass the election returns of and in said county, a verified petition setting forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of, which allegations, if true, will show that the petitioner had received a majority of all votes cast for said nomination, . . . .

"Upon the filing of such a petition, *it shall be the duty of said board, if a re*count is prayed for, *to inspect and count* the ballots questioned, . . . "

It will be noted by that provision the Legislature went back to the 1921 law in providing that upon the filing of a sufficient petition praying for a recount in a primary election the ballots must be recounted. The only proof necessary would be proof that the ballots had been preserved as provided by law, as we held in Brown v. Branson, supra. That section was before this court in Looney v. Election Board of Seminole County, supra, and Looney v. Election Board of Hughes County, supra. In the first Looney Case, this court said:

"Under the provisions of chapter 241, Laws 1929 (Sp. Sess.), an election contestant *is given the right to a recount of the ballots cast in any precinct upon the filing of a verified petition* in the manner and form and within the time therein specified, but before a recount of said ballots may be had, there must be a showing by evidence that the ballots '*had been preserved in the manner and by the officers prescribed* by the statute, and that, they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with.' The burden of making such showing is upon the election contestant. In the absence of such a showing the prima facie case made by the returns of the precinct election officers must prevail."

We also therein held that no testimony need be offered in support of the allegations of a sufficient challenge under that section to entitle contestant to a recount. We said:

"We therefore hold that under the provisions of section 6, c. 241, Laws 1929 (Sp. Sess.), a contestant is given a right to a recount upon the mere filing of a petition in the manner and form and within the time therein specified."

By the following quotations from that opinion we gather the significance of the inclusion in such sections expressions like "Thereupon it shall be the duty of such board to inspect and count the ballots questioned" (6107, C. O. S. 1921) and, "Upon the filing of such a petition, it shall be the duty of such board, if a recount is prayed for, to

inspect and count the ballots questioned." (Sec. 6, ch. 241, Laws 1929.)

"In Brown v. Branson, 139 Okla. 271, 270 P. 63, 67, a challenge to the correctness of the announced results of the primary election was filed with the secretary of the State Election Board. It could not have been filed under the provisions of section 6107, supra, for under those provisions it would have been filed with the county election board. It must have been filed, as held in that case, and as stated by the contestant therein, under the provisions of chapter 63, Laws 1927.

"In discussing the case, the court said:

" 'Further, it will be noticed that section 3 of this act is practically identical with section 6107, *except that it leaves out that part of section 6107 which provides that the contestant shall be entitled to a recount upon the filing of the affidavit or challenge as a matter of right.* It appears that, in this revisory and substitute statute, *if the Legislature intended to give a contestant the right to a recount upon the mere filing of a challenge, it would have said so,* and by reason of having omitted the latter part of section 6107, above referred to, *it expressly intended to change the rule heretofore* in effect.'

"We think that that reasoning must be applied in construing the provisions of the act of 1929, chapter 241. In that act almost the identical language of section 6107, supra, was used. We must conclude that that language was used for the purpose of restoring to the law that provision which this court in Brown v. Branson, supra, said had been repealed."

By that decision we again, in effect, stated that where a party is entitled to a recount merely upon the filing of a verified petition it must set forth the facts, if true, that show that the contestant is entitled to the office. The reason for strictness in requiring a detailed statement of facts in such a case is apparent. No evidence is required in such a case in support of the allegations of the petition. The affidavit itself becomes the only necessary proof required to entitle the contestant to an order for a recount.

I have found no cases where such a strict rule has been applied to the petition filed under a statute which requires the taking of evidence before a recount can be ordered.

In Brown v. Bransón, supra, which was a case arising under a statute that had no such expressions in it sufficient to overcome the presumption of the validity and correctness of the returns of an election. It is apparent from what I have said that the Looney Cases, supra, are not in point here. The Logan v. Young and Brown v. Branson Cases, supra, bear out my view on this material distinction.

There is no expression in the statute whereunder the instant case arises that even intimates that a recount shall be ordered by the State Election Board merely upon the filing of a sufficient challenge or petition. In my judgment a contestant would have to support every allegation of his petition relied upon before he would be entitled to an order of recount, and in view of the very strong presumption in favor of the validity and correctness of the returns of an election, the character of proof offered would have to be clear, cogent, and convincing. This is particularly true of any allegation of fraud. The allegation is made in the instant case that all county and precinct election officials conspired to determine all ballots which were stamped under the Democratic party emblem but also stamped for the opposing party's candidate for Governor as mutilated and that this conspiracy was carried out in every precinct of the State of Oklahoma, and that such ballots were cast in every precinct in the State of Oklahoma, and that in every instance they were determined to be mutilated ballots and were not counted for the Republican nominee, or were counted for the Democratic nominee; that except for the failure of the election officials in all of the precincts to count such ballots cast for the contestant and, except for their mistakes, errors, and omissions in counting and tabulating the votes cast, the petitioner would have won the election. The nature, char-

acter, and extent of this alleged mistake or fraud is exact. The only thing that could have been left out of the allegation is the exact number of votes so cast in each of the 3,690 precincts of the State of Oklahoma.

In the majority opinion it is said:

"A statement of a fact or of facts ordinarily comports with usual or reasonable means of observation or knowledge. When a statement is so broad or so extravagantly made as to preclude any reasonable probability of foundation of observation or knowledge, and is made without any stated foundation or information source, then such statement may characterize itself as a mere conclusion as distinguished from an averment of a state of facts."

By this statement, I take it that the majority concede that there are facts alleged in the challenge which would be sufficient except for the fact, so my associates conclude, that there is no reasonable probability of proof of such alleged facts being made. I do not think we should take judicial knowledge that proof cannot be made of mistakes, errors, omissions, corrupt acts, or illegal counting in the face of positive allegations to the contrary. The effect of this conclusion on the part of the majority is to say that the presumption of regularity and correctness dispels the possibility of proof being made that such ballots were cast and that they were considered mutilated. If such were the facts and the election officials are honest, I think it would be a simple matter to make such proof.

On a hearing before the State Election Board, prior to the time it is required to determine whether or not a recount should be ordered in any county or precinct of the state, evidence would be required to support this general allegation as to all the precincts of the entire state. If this is done, the contestee will have all the evidence of the contestant supplied him by the witnesses in person, and thereafter, no doubt, have an opportunity, such as the circumstances may prescribe, to meet the issues.

The statute now in force is a great improvement in protecting the verity and sanctity of the ballot box over our foregoing statutes. Under the present statute no ballot box will be ordered opened and the ballots therein recounted except upon specific testimony of such convincing weight as to overcome the very strong presumptive verity that attends elections presided over by duly qualified and acting officers of the state.

Though the petition in this case, in a large measure, amounts to nothing more than glittering generalities and conclusions, there are some statements of fact therein that, if proven, would show the contestant entitled to the office. But aside from the vitriolic arguments of counsel and the harsh and extravagant statements and allegations by political partisans, we have before us a question of vital public concern that should be dealt with in a straightforward, positive manner with the sole view of determining the real intention of the people, speaking through the Legislature. I am convinced that the Legislature, thus speaking, intended to provide for election contests and intended to provide a practical, adequate and workable system by which a recount could be accomplished without interference of the right of any individual. I think the Legislature has provided such a method and I do not think that strict rules of construction and pleading should be indulged, especially where, as here, to do so would prevent the will of the people and the Legislature from being carried into effect. An election contest, properly filed and diligently prosecuted, without unwarranted delay on the part of the parties thereto, will determine the rights of both the individual and the public before the time to take office has arrived.

Other than our own cases, the cases relied on by the contestee and cited by the majority opinion are from the states of Colorado, California, Montana, and Oregon.

The Colorado law requires that the contestant allege, among other things, ". . . the time of the election, and the particular cause or causes of the contest; . . ." (3 C. S. A. ch. 59, sec. 286)

and further: "When the reception of illegal or the rejection of legal votes is alleged as a cause of the contest, a list of the number of persons who so voted, or whose votes were rejected, and the precinct or ward where they voted, or offered to vote, shall be set forth in the statement of contestor . . ." (Sec. 287).

The statutes of California, Montana, and Oregon, in effect at the time of the cited opinions, were very similar to the Colorado statutes in these respects. The dissimilarity of the provisions of our statute is clearly apparent. Obviously such cases can give no assistance in reaching a conclusion as to our statute, and therefore constitute no authority for the application of a strict rule of construction as to the sufficiency of a petition for recount under our statute.

In my judgment, the petition in the instant case, though subject to severe criticism for what it says—not what it fails to say—meets the minimum requirements of the law and the principle laid down by the majority opinion; the practical result of the majority opinion is to prevent a district or statewide election contest between Republicans and Democrats.